# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION - CINCINNATI

DEERE CREDIT, INC.,
et al.,

              **Plaintiffs,**

      **-vs-**

CLAYTON RAILROAD
CONSTRUCTION, LLC, et al.,

              **Defendants.**

Case No. 1:11-cv-00823-MRB

JUDGE MICHAEL R. BARRETT

Mag. Judge Litkovitz

## AGREED FINAL JUDGMENT ORDER

This matter comes before the Court upon the agreement of plaintiffs Deere Credit, Inc. ("Deere Credit"), Deere & Company ("Deere & Co."), and John Deere Construction & Forestry Company ("Deere Construction") (collectively "Plaintiffs") and defendants Clayton Railroad Construction, LLC and James R. McAdams, Sr. (collectively "Defendants"). The Court is informed that the parties have reached an agreement to resolve all remaining issues in this case; it is, therefore

**ORDERED, ADJUDGED and DECREED** that judgment be, and hereby is, entered in favor of Plaintiffs against Defendants, jointly and severally, in the amount of $864,902.60 as of September 20, 2012 including additional attorney's fees and costs of $2,800.00 incurred after August 1, 2012, with interest continuing to accrue at the rate of

six percent (6.00%) per annum from September 20, 2012, plus attorney's fees above the $2,800.00 referenced above and costs incurred after that date; and it is further

**ORDERED, ADJUDGED and DECREED** that Plaintiffs be, and hereby are, awarded permanent possession of the following equipment (hereinafter jointly referred to as the "Equipment") and costs of repossession of said Equipment, and that said Equipment be sold and the proceeds of sale be applied in accordance with the rights and priorities of the parties:

- John Deere model CT332 Track Loader with 48" HD Forks (Serial No. T0332TA159955);

- John Deere model HH75 Hydraulic Breaker (Serial No. T0HH75X120022;

- John Deere model 320 Skid Steer Loader (Serial No. T00320A128685);

- John Deere Pallet Fork, John Deere Bale Spear, John Deere model 50DXFF Compact Excavator with 18" & Adapter (Serial No. FF050DX270349);

- John Deere model CT332 Compact Track Loader (Serial No. T0332TB129820);

- John Deere model RC78 Rotary Cutter (Serial No. TORC78X110010);

- John Deere model PA30 Auger with 9" and 12" Augers;

- John Deere model CT322 Loader (Serial No. T0322TB169040);

- John Deere model 310SJ Wheel Loader Backhoe (Serial No. T0310SJ160937);

- John Deere model 550J Crawler Dozer (Serial No. T0550JX141082);

- John Deere model 120C Excavator (Serial No. FF120CX036572);

- John Deere model 350DLC Excavator (Serial No. FF350DX806628);

- John Deere model 624KXDW 4WD Loader (Serial No. DW624KZ624527);

- John Deere model 655C Crawler Loader (Serial No. LU655CX008642);

- Skytrak 8042 Forklift (Serial No. 160035657);

- John Deere model 450J LT Crawler Dozer (Serial No. T0450JX137020); and

- John Deere model 50DXFF Compact Excavator (Serial No. FF050DX270657; and it is further

**ORDERED, ADJUDGED and DECREED** that all of the terms of the existing contracts attached to the complaint as Ex. A, C, E, G, I, K and M (and reattached hereto at Exhibit A) shall remain in force and effect, except those reflecting the amount of payment and when payment is due; and it is further

**ORDERED, ADJUDGED and DECREED** that execution of this judgment shall be held in abeyance so long as Defendants timely pay all of the following installments to Plaintiffs:

- $150,000 on or before October 12, 2012;

- $21,843.88 on or before the twelfth day of each month thereafter until the full amount of the judgment is paid as set forth in the amortization schedule attached hereto as Exhibit B; and it is further

**ORDERED, ADJUDGED and DECREED** that if Defendants miss a payment, they will have ten (10) days to make any payment without penalty. If payment is received after the 10th day, late charges (per contract terms) accrue from the due date. Notice will be sent on the 20th day after payment was due, with ten (10) days to cure. An affidavit of non-payment/default shall be submitted if the failure to pay is not cured within thirty (30) days of due date; and it is further

**ORDERED, ADJUDGED and DECREED** that each check or money order shall be made payable to "John Deere Financial", have the Defendants' account numbers of 227541, 227542, 388806, 416168, 318040, 113159 and a new account number to be

provided by Plaintiffs written on the instrument, and mailed by ordinary U.S. mail, in time to be received on or before the dates specified above, to John Deere Credit, 23176 Network Place, Chicago, IL 60673-1231. Payments may also be sent by overnight delivery to JP Morgan/Chase Corp, 525 West Monroe Street, 8th Floor, Chicago, IL 60661; and it is further

**ORDERED, ADJUDGED and DECREED**, that if Defendants timely make each of the installment payments specified above, Plaintiffs will promptly file a full and complete satisfaction and release of this judgment; and it is further

**ORDERED, ADJUDGED and DECREED** that on the condition that all future payments as outlined above are made to Plaintiffs, then Defendants shall be entitled to retain possession of the Equipment; provided, however, that in the event that Defendants fail to timely make any payment, then Plaintiffs shall be entitled to file an affidavit of non-payment/default with the Clerk and serve same on Defendants and their counsel, and thereupon the execution of the judgment granted Plaintiffs herein shall no longer be held in abeyance and Defendants shall be required, without further order of the Court, to immediately transfer possession of the Equipment to Plaintiffs; in the event an affidavit of non-payment is filed, then Plaintiffs shall also be entitled to file a praecipe for issuance of a writ to the Sheriff and/or U.S. Marshall in order to enforce Plaintiffs' right to possession of the Equipment. Upon recovery of the Equipment, Plaintiffs shall be required to dispose of same in a commercially reasonable manner as required by Chapter 1309 of the Ohio Revised Code, and Plaintiffs shall be required to file a partial or complete satisfaction, as the case may be, of the money judgment granted by this order for the net amount realized from disposition of its collateral; and it is further

4

**ORDERED, ADJUDGED and DECREED** that Defendants shall co-operate fully with Plaintiff in the signing of documents necessary to convert any of the original leases into Retail Installment Contacts; and it is further

**ORDERED, ADJUDGED and DECREED** that all claims against defendant James R. McAdams, Jr. are dismissed with prejudice to future action; and it is further

**ORDERED, ADJUDGED and DECREED** that this Agreed Final Judgment Order resolves all claims and issues raised by all parties.

**IT IS SO ORDERED.**

Dated: 9/13/12

Karen L. Litkovitz
United States Magistrate Judge

APPROVED:

/s/ Douglas J. Segerman

Douglas J. Segerman  (0064779)
**MCFADDEN WINNER SAVAGE & SEGERMAN, LLP**
175 South Third Street, Suite 350
Columbus, Ohio 43215-5188
Telephone (614) 221-8868
Fax (614) 221-3985
Email: djsegerman@earthlink.net

Trial Attorney for Plaintiffs
Deere Credit, Inc., Deere & Company and
John Deere Construction & Forestry Company

APPROVED:

/s/ Robert W. Cettel

Robert W. Cettel  (0034205)
The Drees Center Suite 210
7265 Kenwood Road,
Cincinnati, Ohio 45236-4411
Telephone (513) 766-3883
Fax (513) 766-3883
Email: cettel@mac.com

Trial Attorney for Defendants
Clayton Railroad Construction, LLC,
James R. McAdams, Sr. and
James R. McAdams, Jr.

# JOHN DEERE CREDIT

## Master Lease Agreement

| Agreement No. | 0068401 |
|---|---|

| Lessee | CLAYTON RAILROAD CONSTRUCTION, LLC<br>500 LANE RD. , WEST UNION, OH 45693 |
|---|---|
| Lessor: | DEERE CREDIT, INC.<br>6400 NW 86TH ST, PO BOX 6600, JOHNSTON, IA 50131-6600 |

This Master Lease Agreement ("Master Agreement") is entered into between Deere Credit, Inc , as Lessor ("we", "us" or "our"), and the lessee and any co-lessee identified below ("you" or "your") "Schedule" shall mean any Lease Schedule signed by you and us, which incorporates the terms of this Master Agreement "Lease" shall mean this Master Agreement and any Schedule

## TERMS AND CONDITIONS

1    **Lease Term, Payments**   You agree to lease from us the property ("Equipment") described in each Schedule for the Lease Term  The Lease Term will begin on the Lease Term Start Date and end on the Lease Term End Date  All attachments and accessories itemized on the Schedule and all replacements, parts and repairs to the Equipment shall form part of the Equipment  A Schedule is not accepted by us until we sign it, even if you have made a payment to us  You agree to remit to us the Lease Payments indicated in the Schedule and all other amounts when due and payable each Billing Period, even if we do not send you a bill or an invoice  YOUR PAYMENT OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL, AND ARE NOT SUBJECT TO CANCELLATION, REDUCTION OR SETOFF FOR ANY REASON WHATSOEVER. For any payment which is not received by its due date, you agree to pay a late charge equal to 4% of the past due amount (not to exceed the maximum amount permitted by law) as reasonable collection costs, plus interest from the due date until paid at a rate of 1 5% per month, but in no event more than the maximum lawful rate  Restrictive endorsements on checks you send us will not change or reduce your obligations to us  If a payment is returned to us by the bank for any reason, you agree to pay us a fee of $25 00, or the maximum amount permitted by law, whichever is less  Lease Payments and other payments may be applied, at our discretion, to any obligation you may have to us or any of our affiliates  If the total of all payments made during the Lease Term (and any Renewal Term), exceeds the total of all amounts due under the Lease by less than $25 00, we may retain such excess

2    **Security Deposit.**  If the Schedule provides for a Security Deposit, the Security Deposit will be held by us in a non-interest bearing account, commingled with other funds  We may apply the Security Deposit to any amounts due under the Lease and, if we do so, you agree to promptly remit to us the amount necessary to restore the Security Deposit to the original amount  The Security Deposit will be returned to you within thirty days of termination of a Schedule and final inspection by us, provided you are not in default

3    **Taxes.**  You agree to pay us when invoiced, all sales, use, rental, gross receipts and all other taxes which may be imposed on the Equipment or its use  You agree, at our discretion, to either (a) reimburse us annually for all taxes and governmental charges associated with the ownership, use or possession of the Equipment including, but not limited to, personal property and advalorem taxes ("Property Taxes"), or (b) remit to us each Billing Period our estimate of the pro-rated equivalent of such Property Taxes  If the estimated Property Taxes paid by you are greater than or less than the Property Taxes paid by us, no adjustment will be made  Taxes do not include those measured by our net income  You agree to pay us an administrative fee for the processing of taxes, assessments or fees which may be due and payable under the Lease  If applicable law requires tax returns or reports to be filed by you, you agree to promptly file such tax returns and reports and deliver copies to us  You agree to keep and make available to us all tax returns and reports for taxes paid by you

4    **Security Interest; Missing Information.**  We are the owner of the Equipment and you have the right to use the Equipment under the terms of the Lease  If a Schedule is deemed to be a secured transaction and not a lease, you (a) grant us a security interest in the Equipment (and all proceeds) to secure all of your obligations under the Lease and any other obligations, which you may have, to us or any of our affiliates, and (b) authorize us to file financing statements naming you as debtor  Upon exercise of any Purchase Option Price, we will release our security interest in the Equipment provided you have remitted the Purchase Option Price to us and no event of default has occurred and is continuing  You agree to keep the Equipment free and clear of liens and encumbrances, except those in our favor, and promptly notify us if a lien or encumbrance is placed or threatened against the Equipment  You irrevocably authorize us, at any time, to (a) insert or correct information on the Schedules, including your correct legal name, serial numbers and Equipment descriptions, (b) submit notices and proofs of loss for any required insurance, and (c) endorse your name on remittances for insurance and Equipment sale or lease proceeds

5    **Equipment Maintenance, Operation and Use.**  You agree to (a) USE THE EQUIPMENT ONLY FOR AGRICULTURAL, BUSINESS OR COMMERCIAL PURPOSES AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES, (b) not move the Equipment to another county or state without notifying us within 30 days, (c) operate and maintain the

Equipment in accordance with all (1) laws, ordinances and regulations, (2) manuals and other instructions issued by the manufacturer(s) and supplier(s), and (3) insurance policy terms and requirements, (d) perform (at your own expense) all maintenance and repairs necessary to keep the Equipment in as good a condition as when delivered to you, reasonable wear excepted, (e) not install any accessory or device on the Equipment which affects the value, useful life or the originally intended function or use of the Equipment in any way, unless it can be removed without damaging the Equipment, (f) allow us and our agent(s) to inspect the Equipment and all of your records related to its use, maintenance and repair, at any reasonable time, (g) keep any metering device installed on the Equipment connected and in good working condition at all times, (h) affix and maintain, in a prominent place on the Equipment, any labels, plates or other markings we may provide to you, and (i) not permit the Equipment to be used by, or to be in the possession of, anyone other than you or your employees

6    **Insurance.**  You agree, at your cost, to (a) keep the Equipment insured against all risks of physical damage for no less than its Termination Value (as such term is defined in Section 8 below), naming us (and our successors and assigns) as sole loss payee, and (b) maintain public liability insurance, covering personal injury and property damage for not less than $1,000,000 per occurrence, naming us (and our successors and assigns) as additional insured  All insurance must be with companies and policies acceptable to us  Your obligation to insure the Equipment continues until you return the Equipment to us and we accept it  Each insurance policy must provide that (A) our interest in the policy will not be invalidated by any act, omission, breach or neglect of anyone other than us, and (B) the insurer will give us at least 30 days' prior written notice before any cancellation of, or material change to, the policy

Unless you provide us with evidence of the required insurance coverages, we may purchase insurance, at your expense, to protect our interests in the Equipment  This insurance may not (1) protect your interests, or (2) pay any claim that you make or any claim that is made against you in connection with the Equipment  You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained the insurance required by the Lease  The cost of the insurance may be more than the cost of insurance you may be able to obtain on your own

7    **Loss or Damage.**  Until the Equipment is returned to us in satisfactory condition, you are responsible for all risk of loss and damage, loss, theft, destruction or seizure of the Equipment (an "Event of Loss")  You must promptly notify us of any Event of Loss  If the Equipment can be repaired or replaced, you agree to promptly repair or replace the Equipment, at your cost, and the terms of the Lease will continue to apply  If the Equipment cannot be repaired or replaced, you agree to pay us, within 10 days of the Event of Loss, its Termination Value as of the day before such Event of Loss occurred  Upon receipt of the Termination Value, we will transfer to you (or the insurance company) all of our right, title and interest in such item(s) of Equipment (each, an "Item") AS-IS, WHERE-IS, WITHOUT ANY WARRANTY AS TO CONDITION OR VALUE  All insurance proceeds must be paid directly to us, and we may apply any excess insurance proceeds to any other amounts you owe us or any of our affiliates

8    **Early Termination**  If you request, and we agree to, a termination of a Schedule before the expiration of its Lease Term, you agree to (a) deliver the Equipment to us at the time and place we choose, and (b) if the net proceeds we receive from any sale, lease or other disposition of the Equipment (after deducting all of our costs and expenses) is less than the Termination Value, remit to us the difference  The "Termination Value" of any Item of Equipment shall be the greater of Fair Market Value or Net Book Value as of the date of determination of any early termination, loss or default  "Fair Market Value" or "FMV" is (1) the value that would be obtained in an arm's length sale of that Item between an informed and willing seller under no compulsion to sell (but with no deduction for shipping costs), and an informed and willing buyer, as estimated by us, plus (2) the estimated cost to repair and refurbish the Item so that it is in satisfactory condition, as described in Section 9  "Net Book Value" for any Item is the sum of (1) all Lease Payments and any other amounts then due and payable to us, plus (2) the present value of all remaining Lease Payments and other amounts, discounted at the Internal Rate of Return or, if a discount rate is set forth in the applicable Schedule, such discount rate (the "Discount Rate"), plus (3) the unamortized amount of our indirect costs of originating and administering the applicable Schedule, plus (4) the present value of the Purchase Option Price (or, if there is no Purchase Option Price,

*(EX. A - LEASE)*   **EX. A - CONTRACTS**

## ADDITIONAL TERMS AND CONDITIONS OF AGREEMENT

the residual value that we assumed in calculating Lease Payments), discounted at the Discount Rate "Internal Rate of Return" shall be calculated using standard finance techniques with the Equipment Cost, Lease Payments, Lease Term and Purchase Option Price (or residual value assumption) as the variables

9    Return of Equipment. If a Schedule is terminated for any reason and you do not (a) return the Equipment to us, (b) exercise any Purchase Option, or (c) exercise any Renewal Option, you agree to remit to us, until such time as the Equipment is returned to us in accordance with the provisions of this Section, lease payments each month equal to the higher of (i) the monthly fair market rental value of the Equipment, as determined by us in our sole discretion, or (ii) the monthly Lease Payment set forth in the Schedule (or the monthly lease payment equivalent if the Lease Payments are other than monthly (e g, for annual Lease Payments, the monthly lease payment equivalent would be calculated by dividing the annual Lease Payment by 12)) All Equipment must be returned to the place designated by us, at your expense and in satisfactory condition, along with all use, maintenance and repair records  Equipment is in satisfactory condition if it is in as good a condition as when the Equipment was delivered to you, reasonable wear excepted, and conforms to the standards of any Equipment Return Provisions incorporated into the Lease

10    Default. You will be in default if  (a) you fail to remit to us any Lease Payment or other payment when due, (b) you breach any other provision of the Lease and such default continues for 10 days, (c) you remove any Equipment from the United States, (d) a petition is filed by or against you or any guarantor under any bankruptcy or insolvency law, (e) a default occurs under any other agreement between you for any of your affiliates) and us (or any of our affiliates), (f) you or any guarantor merges with or consolidates into another entity, sells substantially all its assets, dissolves or terminates its existence, or (if an individual) dies, or (g) you fail to maintain the insurance required by Section 6  Time is of the essence under the Lease

11    Remedies  If a default occurs, we may do one or more of the following  (a) require you to return the Equipment in the manner outlined in Section 9, or take possession of the Equipment, (b) recover from you, AS LIQUIDATED DAMAGES FOR LOSS OF BARGAIN AND NOT AS A PENALTY (i) if the Equipment is so returned, the sum of (1) all Lease Payments and any other amounts then due and payable to us, plus (2) the present value of all remaining Lease Payments and other amounts, discounted at the Discount Rate, plus (3) the unamortized amount of our indirect costs of originating and administering the applicable Schedule (the "Default Amount"), or (ii) if the Equipment is not so returned, the Termination Value as of the date of such default, (c) lease or sell the Equipment or any portion thereof at a public or private sale and apply the net proceeds we receive from any sale, lease or other disposition of the Equipment (after deducting all of our costs and expenses) to the Default Amount, with you remaining liable for any deficiency, (d) declare any other agreements between you and us (or any of our affiliates) in default, (e) terminate any of your rights (but none of your obligations) under any Lease and any other agreement between you and us (or any of our affiliates), (f) charge you for the expenses incurred in connection with the enforcement of our remedies including, without limitation, repossession, repair and collection costs, attorneys' fees and court costs, (g) exercise any other remedy available at law or in equity, and (h) take on your behalf (at your expense) any action required by the Lease which you fail to take  These remedies are cumulative, are in addition to any other remedies provided by law, and may be exercised concurrently or separately  Any failure or delay by us to exercise any right shall not operate as a waiver of any other right or future right

12    Assignment. You will not assign, pledge or otherwise transfer any of your rights or interests in the Lease or any Equipment without our prior written consent  Any assignment without our consent will be void   The Lease shall be binding upon any successor or permitted assignee  We may assign the Lease or our interest in the Equipment at any time without notice to you and without your consent   We may provide information about you to any prospective assignee or participant  You agree not to assert against our assignee any claims, offsets or defenses which you may have against us

13    Indemnity.   You are responsible for all losses, damage, claims, infringement claims, injuries to or the death of an individual, and attorneys'

fees and costs ("Claims"), incurred or asserted by any person, in any manner related to the Equipment or the lease thereof, including its use, condition or possession  You agree to defend and indemnify us, and hold us harmless, against all Claims, although we reserve the right to control the defense and to select or approve defense counsel  You will promptly notify us of all Claims made  Your liability under this Section is not limited to the amounts of insurance required under the Lease  This indemnity continues beyond the termination of a Schedule, for acts or omissions, which occurred during the Lease Term

14    Representations and Warranties  You represent and warrant to us, as of the date of this Master Agreement and of each Schedule, and covenant to us so long as the Lease is in effect, that (a) you will not change your name without giving us at least 30 days' prior written notice, (b) each document you sign and deliver to us is duly authorized, executed and delivered by you, and is your valid, legal and binding agreement, enforceable in accordance with its terms, (c) execution, delivery and performance by you of any Lease does not and will not (1) violate any applicable law, (2) breach any order of court or other governmental agency, or of any undertaking you are a party to or by which you or any of your properties are bound, (d) you will comply with all applicable laws, ordinances and regulations, (e) all information you have given to us is true, accurate and complete, and (f) since the date of the most recent financial information given to us, no material adverse change in your business, assets, or prospects has occurred   You will promptly deliver to us such financial statements, reports and other information as we may request

Unless you are an individual, you also represent and warrant to us that (a) you are and will remain duly organized, validly existing and in good standing under the laws of your jurisdiction of organization, (b) you are qualified to do business under the laws of all other jurisdictions where qualification is required or advisable, (c) you will not change your jurisdiction of organization or organization type without at least 30 days' prior written notice to us, and (d) the execution, delivery and performance by you of the Lease will not breach any provision of your organizational documents

15    Governing Law; Jurisdiction; Venue.   EACH LEASE WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF IOWA, WHERE THIS MASTER AGREEMENT IS ACCEPTED AND ENTERED INTO, except for its conflict of laws provisions   You irrevocably submit to the non-exclusive jurisdiction and venue of federal and state courts located in Des Moines, Iowa and will not claim it is an inconvenient forum for legal action   YOU AND WE IRREVOCABLY WAIVE ANY RIGHT YOU AND WE MAY HAVE TO A JURY TRIAL.

16    Miscellaneous  WE HAVE NOT MADE, AND DO NOT MAKE, ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE    EQUIPMENT'S    MERCHANTABILITY,    FITNESS    FOR    A PARTICULAR PURPOSE, SUITABILITY, OR OTHERWISE   WE ARE NOT LIABLE FOR CONSEQUENTIAL OR SPECIAL DAMAGES   You acknowledge that no supplier or dealer of the Equipment is an agent of ours, or authorized to act for or bind us  You agree not to withhold any amount you owe us if you believe you have a claim against us, or any Equipment supplier(s) or manufacturer(s), but to pursue that claim independently  Any claim you have against us must be made within two years after the event that caused it  All notices must be in writing and will be deemed given 5 days after mailing to the intended recipient at its address indicated above, unless changed by a notice given in accordance with this Section   Each Lease supersedes and replaces all prior understandings and communications (oral or written) concerning the subject matter thereof   No part of any Lease can be amended, waived or terminated except by a writing signed by both you and us  Any part of this Master Agreement may be signed in separate counterparts that, together, will constitute one document   If a court finds any part of this Master Agreement to be invalid or unenforceable, the remainder of this Master Agreement will remain in effect  You permit us to monitor and record telephone conversations between you and us  All of our rights under each Lease shall remain in effect after the expiration of the Lease Term or termination of the Schedule

---

THE TERMS OF THIS MASTER AGREEMENT SHOULD BE READ CAREFULLY BEFORE SIGNING BECAUSE ONLY THESE WRITTEN TERMS ARE ENFORCEABLE NO OTHER TERMS OR ORAL PROMISES MAY BE LEGALLY ENFORCED  BY SIGNING THIS MASTER AGREEMENT, YOU AGREE TO THE TERMS ON BOTH PAGES 1 AND 2  THIS MASTER AGREEMENT IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN YOU AND US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT

| CLAYTON RAILROAD CONSTRUCTION, LLC | DEERE CREDIT, INC. |
|---|---|
| LESSEE   500 LANE RD   WEST UNION, OH 45693 | LESSOR   6400 NW 86th ST, PO BOX 6600   JOHNSTON, IA 50131-6600 |
| By   _James E M'Adane_   JAMES R MCADAMS JR, OWNER | By   _____ |
| Date   9/13/10 | Title   Coordinator   Date 4/31/10 |

RECEIVED
THROUGH US MAIL     App 10904539

APR 1 2 2010

DEERE CREDIT, INC.


**JOHN DEERE CREDIT**

## Co-Lessee Addendum
(To Master Lease Agreement)

| Master Lease Agreement No. | 0068401 |
|---|---|

| **Lessee:** (Name & Address) | **CLAYTON RAILROAD CONSTRUCTION, LLC** 500 LANE RD, , WEST UNION, OH 45693 |
|---|---|
| **Lessor:** | **DEERE CREDIT, INC.** 6400 NW 86th ST, PO BOX 6600, JOHNSTON, IA 50131-6600 |

By signing below, each of the co-lessees identified hereinbelow (each, a "Co-Lessee") acknowledges and agrees that (1) the Lessee indicated on the above referenced Master Lease Agreement (the "Master Agreement") and EACH CO-LESSEE SHALL BE JOINTLY AND SEVERALLY LIABLE FOR ANY AND ALL OF THE OBLIGATIONS set forth in the Master Agreement and each Lease Schedule entered into from time to time thereunder including, but not limited to, the punctual payment of any periodic payments or any other amounts which may become due and payable under the terms of the Master Agreement, whether or not said Co-Lessee signs each Lease Schedule or receives a copy thereof, and (2) it has received a complete copy of the Master Agreement and understands the terms thereof

In the event (a) any Co-Lessee fails to remit to the Lessor indicated above any Lease Payment or other payment when due, (b) any Co-Lessee breaches any other provision of the Master Agreement or any Lease Schedule and such default continues for 10 days, (c) any Co-Lessee removes any Equipment (as such term is more fully described in the applicable Lease Schedule) from the United States, (d) a petition is filed by or against any Co-Lessee or any guarantor under any bankruptcy or insolvency law, (e) a default occurs under any other agreement between any Co-Lessee (or any of Co-Lessee's affiliates) and Lessor (or any of Lessor's affiliates), (f) or any Co-Lessee or any guarantor merges with or consolidates into another entity, sells substantially all its assets, dissolves or terminates its existence, or (if an individual) dies, or (g) any Co-Lessee fails to maintain the insurance required by Section 6 of the Master Agreement, Lessor may pursue any and all of the rights and remedies available to Lessor under the terms of the Master Agreement directly against any one or more of the Co-Lessees Nothing contained in this Addendum shall require Lessor to first seek or exhaust any remedy against any one Co-Lessee prior to pursuing any remedy against any other Co-Lessee(s)

Capitalized terms not defined in this Addendum shall have the meaning provided to them in the Master Agreement

| Individuals | |
|---|---|
| **CO-LESSEE** | **JAMES R MCADAMS JR** 500 LANE RD WEST UNION, OH 45693 |

By _James R McAdams_
   JAMES R MCADAMS JR

Date _3/18/10_

RECEIVED THROUGH US MAIL

APR 1 2 2010

DEERE CREDIT, INC.

App 10904539



# JOHN DEERE CREDIT

## Lease Schedule

| | |
|---|---|
| **Lease Schedule No.** | i-000 |
| **Master Lease Agreement No.** | 0068401 |

| | |
|---|---|
| **Lessee:** (Name & Address) | **CLAYTON RAILROAD CONSTRUCTION, LLC** 500 LANE RD, WEST UNION, OH 45693 |
| **Lessor:** | **DEERE CREDIT, INC.** 6400 NW 86th ST, PO BOX 6600, JOHNSTON, IA 50131-6600 |

### LEASE TERM

| Lease Term Start Date | Lease Term End Date | # Of Payments | Lease Payment | Sales/Use Tax | Total Lease Payment | Purchase Option Price |
|---|---|---|---|---|---|---|
| 03/18/2010 | 03/18/2012 | 24 | $1,824 46 | $187 01 | $2,011 47 | $28,355 80 |

### RENEWAL TERM

| Renewal Term Start Date | Renewal Term End Date | # Of Payments | Renewal Lease Payment Amount | Sales/Use Tax | Total Renewal Lease Payment | Purchase Option Price |
|---|---|---|---|---|---|---|
| | | | | | | |

### PAYMENT TERMS

| Due Date | 1st Payment Due Date | Discount Rate | |
|---|---|---|---|
| 18 | 03/18/2010 | Internal Rate of Return minus 2 percent (2%) | |
| **Billing Period** | | Irregular Payments | |

### PAYMENT DUE AT SIGNING

| | |
|---|---|
| **Advance Lease Payment** | **$2,011 47 |
| **Documentation Fee** | $0 00 |
| **Security Deposit** | $0 00 |
| **Total Due At Signing** | $2,011.47 |

☑ Monthly
☐ Quarterly
☐ Semi-Annual
☐ Annual
☐ Irregular

**Advance Lease Payment includes the first (1) and last (0) Lease Payment(s)

"Master Agreement" shall mean the above referenced Master Lease Agreement "Schedule" shall mean this Lease Schedule "Lease" shall mean this Schedule and the Master Agreement All of the terms and conditions set forth in the Master Agreement and any amendment, addendum, schedule or attachment thereto or hereto including, but not limited to, the Maintenance Addendum are hereby incorporated into and made a part of this Schedule

**Lease Payments.** You agree to remit the Lease Payments (and applicable sales, use and property taxes) on the dates noted above and all other amounts when due to DEERE CREDIT, INC , P O Box 4450, Carol Stream, IL 60197-4450

**Hourly Charges.** You certify that the hour meter reading on each item of Equipment is accurate as of the date you sign this Schedule If you use any Equipment during the Lease Term for more than the Hourly Limit indicated above for that item, you will pay to us within 10 days of the Lease Term End Date (or any earlier termination of the Lease) an amount equal to the Excess Hour Charge for that item for each hour in excess of the Hourly Limit If the Lease is terminated, cancelled or extended for any reason, the Hourly Limit will be prorated by us as our sole discretion

**Purchase Option.** You may purchase the Equipment on the Lease Term End Date (or the Renewal Term End Date) for the applicable Purchase Option Price (plus applicable Taxes including estimated property taxes), provided (1) you are not in default, (2) we receive written notice of your intent to purchase the Equipment at least 60 days before the Lease Term End Date (or the Renewal Term End Date), and (3) we receive the Purchase Option Price and any other amounts you owe us on or before the Lease Term End Date (or the Renewal Term End Date) Upon receipt of the Purchase Option Price, we will transfer to you all of our right, title and interest in such item(s) of Equipment AS-IS, WHERE-IS, WITHOUT ANY WARRANTY AS TO CONDITION OR VALUE

**Renewal Term** IF A RENEWAL TERM IS PROVIDED FOR ABOVE, THE LEASE TERM SHALL RENEW AUTOMATICALLY FOR THE RENEWAL TERM UNLESS (1) YOU NOTIFY US AT LEAST SIXTY (60) DAYS BEFORE THE LEASE TERM END DATE THAT YOU DO NOT INTEND TO RENEW THE LEASE AND YOU RETURN ALL OF THE EQUIPMENT ON OR BEFORE THE LEASE TERM END DATE, OR (2) YOU EXERCISE THE PURCHASE OPTION You agree to remit to us

the Renewal Lease Payments indicated above (plus applicable taxes and other amounts) when due and payable each Billing Period, even if we do not send you a bill or an invoice

**Representations and Warranties** You represent and warrant to us, as of the date you signed this Schedule, that (1) the Equipment was selected by you, (2) the Equipment (including all manufacturer manuals and instructions) has been delivered to, and examined by, you, (3) the safe operation and the proper servicing of the Equipment were explained to you, (4) you received the written warranty applicable to the Equipment and understand that your rights under the written warranty may be limited, (5) the Equipment is unconditionally and irrevocably accepted by you as being suitable for its intended use, (6) the Equipment is in good condition and repair (operating and otherwise), (7) the Equipment shall be used only for the purpose indicated herein, (8) except as disclosed to us, neither you nor any person related to you has an equity interest in the Equipment on the Lease Term Start Date, and (9) all information provided to us by you is true and correct

You acknowledge and agree that (1) we did not select, manufacture or supply any of the Equipment, (2) we acquired the Equipment at your direction, (3) you selected the supplier of the Equipment, (4) you are entitled to all manufacturer warranties ("Warranty Rights") and we assign all Warranty Rights to you, to the extent assignable, (5) you may request an accurate and complete statement of the Warranty Rights, including any disclaimers and limitations, directly from the manufacturer, and (6) you assign to us all your rights (but none of your obligations) under all purchase orders, purchase agreements or similar documents relating to the Equipment You waive all rights and remedies conferred on a lessee under Article 2A of the Uniform Commercial Code

Lease Payments may be based on the assumption that we will be entitled to certain tax benefits as the owner of the Equipment If you take or fail to take any action that results in a loss of such tax benefits, you will pay us, on demand, the amount we calculate as the value of such lost tax benefits

DCI MLS OL (NI STDT) 11/2004

Page 1 of 2

App 10904539

**RECEIVED THROUGH US MAIL**

APR 1 2 2010

**DEERE CREDIT, INC.**

## Lease Schedule – Equipment List

| Supplier (Name & Address) | | | BROOKSIDE EQUIP SALES, INC. 7707 MOSLEY, HOUSTON, TX 77017 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **EQUIPMENT INFORMATION** | | | | | | | | | | |
| Year | Make | Model | Equipment Description | Serial Number | Hour Meter | Hour Limit | Excess Hour Charge | Payment | Purchase Option |
| 2008 | JD | CT332 | TRACK LOADER WITH 48" HD FORKS | T0332TA159955 | 0 | 800/YR | $14 32/HR | $1,408 15 | $24,753 60 |
| 2009 | JD | HH75 | HYDRAULIC BREAKER | T0HH75X120022 | 0 | 0 | $0 | $416 31 | $3,602 20 |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| Equipment Location | | | 10247 HWY 59, WHARTON, TX, 77488 | | | OUTSIDE city limits ☐ | | WHARTON COUNTY | |

BY SIGNING THIS SCHEDULE, YOU AGREE TO ALL OF THE TERMS AND CONDITIONS OF THIS SCHEDULE AND THE MASTER AGREEMENT.

**LESSEE** CLAYTON RAILROAD CONSTRUCTION, LLC
500 LANE RD
WEST UNION, OH 45693

By _JAMES R MCADAMS JR, OWNER_

Date ▶ 3/13/10

**LESSOR** DEERE CREDIT, INC.
6400 NW 86ᵗʰ ST, PO BOX 6600
JOHNSTON, IA 50131-6600

By _____

Title _Process Coordinator_ Date 4/31/10

RECEIVED
THROUGH US MAIL

APR 1 2 2010

DEERE CREDIT, INC.



# JOHN DEERE
## CREDIT

## Equipment Return Provisions

| Lease Schedule No. | 000 |
|---|---|
| Master Lease Agreement No. | 0068401 |

| **Lessee:** (Name & Address) | CLAYTON RAILROAD CONSTRUCTION, LLC 500 LANE RD , , WEST UNION, OH 45693 |
|---|---|
| **Lessor:** | DEERE CREDIT, INC. 6400 NW 86ᵗʰ ST, PO BOX 6600, JOHNSTON, IA 50131-6600 |

The following Equipment Return Provisions are hereby incorporated into and made a part of that certain John Deere Master Lease Agreement dated as of the 18 day of March, 2010 (the "Master Agreement"), and entered into between Deere Credit, Inc , as Lessor ("us", "we" or "our"), and CLAYTON RAILROAD CONSTRUCTION, LLC, as Lessee ("you" or "your") Pursuant to Section 9 of the Master Lease Agreement, all Equipment must be returned to us in satisfactory condition Unsatisfactory condition shall include any condition described in Sections 1 through 4 below ("Excessive Wear and Tear")

**1. Mechanical**

A Computer systems or safety and emission control equipment not in proper working order

B Mechanical components that are missing, broken or unsafe or that do not operate normally, other than normal tune-ups, given the age of the equipment

C Wear on power train assembly that exceeds manufacturer's then current standards for normal wear and tear

D Any air filters not within manufacturer's specifications

E Any gauges or fluid indicators that are damaged or do not function, the electrical system fails to operate properly, the battery fails to hold a charge or any wire harnesses that are not tied down and kept secured, dry and clean

F Any pumps, motors, valves or cylinders not in good operating condition or that fail to meet manufacturer's rated specifications or hydraulic system exceeds manufacturer's then-current contaminant standards (as shown by oil sample analysis) Equipment not serviced according to the manufacturer's operating manual

G Any lubricant, water or A/C seal leaks

**2. Exterior.**

A Dents larger than 2 inches in diameter

B Excessive number of dents or scratches

C Any scratch 8" or longer that reaches the metal skin

D Any single chip the size of a quarter or larger or multiple small chips within one square foot

E Substandard paint repairs, such as peeling, bubbling or mismatched shades that evidence poor condition in comparison with original paint and require repainting at a cost in excess of $200

F Rust holes in the body metal or a rust spot that covers more than a 4-inch square area

G Any glass that must be replaced due to cracks or missing glass and any windshield damage greater than $50 in amount

H All frame damage and substandard frame repairs

I Any tires or tracks that (a) have broken side walls or excessive cuts or damages, or (b) have less than 50% of the original useful life remaining, or (c) are not of the same size, type grade or equivalent quality manufacturer as were originally included on the Equipment

**3. Cab/Operator Platform**

A Heavy interior soil or strong odors, such as manure, that cannot be removed by general cleaning

B Unclean condition of operator environment

C Holes, tears, or burns on the dash, floor covers, seats, headliners, upholstery or interior

**4 General**

A Equipment not operated or maintained in accordance with the manufacturer's specifications or if components, fuels or fluids, on or in connection with the Equipment that do not meet manufacturer's standards were used

B Any other damage that in the aggregate costs $250 or more to repair or that makes the Equipment unlawful or unsafe to operate

**5. Other.**

A All warranty and PIP work must be completed prior to the Termination Date of the Lease Schedule relating to the Equipment

B The Equipment must be cleaned prior to its return

**6. Hour Meter** For each item of Equipment returned with a broken or missing hour meter, you shall accept an invoice from us and remit to us an amount equal to $1,000 You agree that the hour meter included with the Equipment is conclusive of the number of hours of Equipment use

**7. Invoices for Excess Wear And Tear** Upon any return of the Equipment, we shall, in our sole discretion, determine the existence of any Excessive Wear and Tear In the event any item of Equipment is returned to us with Excessive Wear and Tear, you shall, at our sole discretion, either (i) accept an invoice from us and remit to us the cost of repairing or replacing the affected component(s) which we determine necessary to return the Equipment to its required condition, and/or (ii) accept an invoice from us and remit to us an amount equal to our estimate of (1) the cost of new tires or tracks if the tires or tracks are damaged due to broken side walls or excessive cuts or damage , or (2) the cost of new tires or tracks multiplied by the difference between (A) our estimate of the percentage of the useful life of the tires and tracks then remaining, and (B) fifty percent (50%) For example, if you return Equipment with tires having 20% of their useful life remaining, you would remit to us an amount equal to 30% of the cost of new tires ((50% - 20%) multiplied by the cost of new tires) Your failure to remit the required payment to us within ten (10) days of demand shall constitute a default by you under the terms of the Lease

| LESSEE | CLAYTON RAILROAD CONSTRUCTION, LLC 500 LANE RD WEST UNION, OH 45693 | LESSOR | DEERE CREDIT, INC. 6400 NW 86ᵗʰ ST, PO BOX 6600 JOHNSTON, IA 50131-6600 |
|---|---|---|---|
| By | JAMES R MCADAMS JR, OWNER | By | |
| Date | 9/18/10 | Title Processing Coordinator Date 4/21/10 | |

RECEIVED THROUGH US MAIL

APR 1 2 2010

DEERE CREDIT, INC.

App 10904539


## JOHN DEERE
### CREDIT

# Delivery and Acknowledgment

| Lease Schedule No | 000 |
|---|---|
| Master Lease Agreement No. | 0058401 |

| Lessee.<br>(Name & Address) | CLAYTON RAILROAD CONSTRUCTION, LLC<br>500 LANE RD., , WEST UNION, OH 45693 |
|---|---|
| Lessor: | DEERE CREDIT, INC<br>6400 NW 86th ST, PO BOX 6600, JOHNSTON, IA 50131-6600 |

Capitalized terms shall have the meanings set forth in the above referenced Master Lease Agreement

Lessee hereby represents and warrants that (1) all of the Equipment more fully described in the above referenced Lease Schedule was selected by Lessee, (2) all of the Equipment and the Operator's Manuals have been delivered to, and received by, Lessee, (3) All of the Equipment has been inspected by Lessee and is in good working order, (4) all of the Equipment is unconditionally and irrevocably accepted by Lessee for all purposes under the Lease, (5) the safe operation and the proper servicing of the Equipment have been explained to Lessee, (6) Lessee received the manufacturer's written warranty applicable to the Equipment and Lessee understands that its rights are subject to the limitations outlined therein, (7) No Event of Default has occurred and is continuing, and (8) no material adverse change in the financial or business condition of Lessee has occurred since the date of the last financial statement submitted to Lessor by Lessee

Signed by Lessee's duly authorized representative on the date shown below

| LESSEE | CLAYTON RAILROAD CONSTRUCTION, LLC<br>500 LANE RD<br>WEST UNION, OH 45693 | LESSOR | DEERE CREDIT, INC.<br>6400 N W 86th STREET, PO BOX 6600<br>JOHNSTON, IA 50131-6600 |
|---|---|---|---|
| By | _James R M'adams_<br>JAMES R MCADAMS JR, OWNER | By | _[signature]_ |
| Date | 3/18/10 | Title | Processing Coordinator    Date 4/31/10 |

RECEIVED
THROUGH US MAIL

APR 1 2 2010

DEERE CREDIT, INC.

**JOHN DEERE CREDIT**

## Property Tax Acknowledgment

| | |
|---|---|
| Lease Schedule No. | 000 |
| Master Lease Agreement No. | 0068401 |

| | |
|---|---|
| **Lessee:** (Name & Address) | CLAYTON RAILROAD CONSTRUCTION, LLC<br>500 LANE RD, WEST UNION, OH, 45693 |
| **Lessor:** | DEERE CREDIT, INC.<br>6400 NW 86th ST, PO BOX 6600, JOHNSTON, IA 50131-6600 |

As Lessor and Owner of the equipment, Deere Credit, Inc. is responsible for filing and paying property tax to the appropriate taxing authority  Lessee *should not report* this equipment on their property tax return.

Lessor will bill Lessee for property taxes upon receipt of an assessment from the taxing authority  Lessee will reimburse Lessor for property taxes upon receipt of an invoice from John Deere Credit  Please refer to section 3 of the Master Lease Agreement for further information

The equipment listed on the attached Master Lease Schedule – Equipment Listing will be reported to the following taxing jurisdiction(s)

| | | | |
|---|---|---|---|
| 10247 HWY 59 | | ☐ Check here if OUTSIDE city limits | |
| Street Address | | | |
| WHARTON | TX | 77488 | WHARTON |
| City | State | Zip | County |

**PLEASE VALIDATE THE ABOVE INFORMATION & MAKE APPLICABLE CHANGES BELOW:**

| | | | |
|---|---|---|---|
| | | ☐ Check here if OUTSIDE city limits | |
| Street Address | | | |
| City | State | Zip | County |

| ☐ Check here if Sales/Use Tax Exempt | ☐ Check here if Property Tax Exempt |
|---|---|

| Equipment Usage: | |
|---|---|
| Percentage of Time: | |

The undersigned (the "Lessee") acknowledges that they have verified the equipment location listed above, understands that the *Lessor will file and pay property taxes and that the Lessee is required to reimburse Lessor upon receipt of an invoice for property taxes*  Failure to reimburse Lessor for property taxes shall constitute an Event of Default as described in Section 10 of the Lease

| | |
|---|---|
| **LESSEE** | CLAYTON RAILROAD CONSTRUCTION, LLC<br>500 LANE RD<br>WEST UNION, OH 45693 |

By ~~James R McAdams Jr. Owner~~

Date 3/18/10

RECEIVED
THROUGH US MAIL

APR 1 2 2010

DEERE CREDIT, INC.

DCI PROPERTY TAX ACKNOWLEDGMENT 11/2004          Page 1 of 1          App 10904539



**JOHN DEERE**
**CREDIT**

Application ID: 10577675
Version Number: 2
**FIXED RATE CONTRACT**
AG/C&CE Business or Commercial Use

## LOAN CONTRACT - SECURITY AGREEMENT
Contract Begin Date. 12/20/2007

| SELLER'S NAME AND ADDRESS | | DEALER NUMBER | PHONE NUMBER |
|---|---|---|---|
| CAHALL BROS INC 50 CAHALL BROTHERS LANE GEORGETOWN, OH 45121 | | 05-0185 | 937-378-6439 |

**PHYSICAL DAMAGE INSURANCE REQUIRED: If you elect Physical Damage Insurance below, such insurance does not include liability insurance coverage for bodily injury or property damage caused to others.**

| INSURANCE DISCLOSURES: You may obtain property insurance from any agent that is acceptable to us. Physical Damage Insurance will not be provided unless you sign at the right and the premium is indicated | TERM IN MONTHS | TOTAL PREMIUM | By signing below, you want Physical Damage Insurance and agree to pay the premium (Sign in this box) X |
|---|---|---|---|

| BORROWER'S NAME AND PHYSICAL ADDRESS | | BORROWER'S SOC SEC NUMBER | BORROWER'S PHONE NO | TYPE OF BUSINESS |
|---|---|---|---|---|
| JAMES R MCADAMS SR 500 LANE RD WEST UNION, OH 45693-9440 | | | 937-549-2952 | |
| BORROWER RESIDES IN (County/State) ADAMS, OH | | BORROWER AGREES TO KEEP GOODS IN (County/State) ADAMS, OH | | |

**1. Parties.** This Loan Contract-Security Agreement ("Contract") is entered into between the Deere & Company ("we", "us" or "our") and the borrower(s) indicated above ("you" or "your"). If more than one borrower is indicated, each borrower shall be jointly and severally liable for all of the obligations under this Contract.

**2. Loan.** You hereby apply for a loan in the Amount Financed shown below, which, if accepted by us, the loan will be (a) subject to the terms and conditions set forth in this Contract, and (b) used to finance the balance due on the purchase from the Seller of the equipment and/or services described below (the "Equipment"). All attachments and accessories itemized on this Contract and all replacements, parts and repairs to the Equipment shall form part of the Equipment.

**3. Installment Payments.** In addition to any down payment, you agree to pay us the Total of Payments by remitting each of the Installment Payments on or before the due dates indicated. This Contract is not accepted by us until we sign it, even if you have made a payment to us. You agree to remit to us the Installment Payments and all other amounts when due and payable each Billing Period, even if we do not send you a bill or an invoice. **YOUR PAYMENT OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL, AND ARE NOT SUBJECT TO CANCELLATION, REDUCTION OR SETOFF FOR ANY REASON WHATSOEVER.** For any scheduled payment which is not received by its due date, you agree to pay us interest on the unpaid amount at a rate of 20% per annum on that scheduled payment, but in no event more than the maximum lawful rate, from the due date until paid. Restrictive endorsements on checks you send to us will not change or reduce your obligations to us. We will not lose any rights if we accept late or partial payments or delay enforcing your rights under this Contract. If a check or electronic payment authorization you give us is dishonored upon first presentment, you agree to pay us a fee of $25.00, or the maximum amount permitted by law, whichever is less. Installment Payments and other payments, including proceeds of insurance or any sale of the Equipment, may be applied, at our discretion and in spite of any instructions you may provide, to any obligation you may have to us or any of our affiliates. If the total of all payments made by you exceeds the total of all amounts due under this Contract by less than $25.00, we may retain such excess.

| EQUIPMENT PURCHASED | | | | | |
|---|---|---|---|---|---|
| QTY. | NEW USED | MFR | MODEL | EQUIPMENT DESCRIPTION | AMOUNT |
| 1 | USED | JD | 320 | 320 Skid Steer Loader | $25,400.00 |
| PRODUCT ID NO. T00320A128685 | | | | | |
| 1 | NEW | JD | | PALLET FORK | $1,000.00 |
| PRODUCT ID NO | | | | | |
| 1 | NEW | JD | | BALE SPEAR | $600.00 |
| PRODUCT ID NO | | | | | |

**RECEIVED**

| DOC3015 | 12/21/2007 | Settlement Nbr. 10577675 | Equipment Type Agriculture Agricultural Application ID 10577675  Version Number. 2 | Customer Initials | DEC 3 1 2007 |
|---|---|---|---|---|---|

Revision Date August, 2006



DEERE & CO

**(EX. C - 7541)**

## TRADE-IN and CASH DOWN PAYMENT

| QTY. | MFR | MODEL | DESCRIPTION OF TRADE-IN (From Purchase Order) | PRODUCT ID NO. | AMOUNT |
|------|-----|-------|-----------------------------------------------|----------------|--------|
| | | | | TOTAL TRADE-IN: | $0.00 |
| | | | | CASH DOWN PAYMENT: | $2,500.00 |
| | | | | RENTAL APPLIED: | $0.00 |
| | | | | TOTAL TRADE-IN PLUS CASH DOWN | $2,500.00 |

### INSTALLMENT PAYMENTS

DATE FINANCE CHARGE BEGINS December 20, 2007

*The first Installment Payment Due Date is January 20, 2008 and each successive Installment Payment is due on the same day of the Month thereafter, (the "Billing Period"), unless otherwise provided below.*

| NUMBER OF PAYMENTS | AMOUNT OF EACH PAYMENT | DUE DATE |
|--------------------|------------------------|----------|
| 48 | $578.05 | January 20, 2008 |

The amounts shown below as Finance Charge, Total of Payments and Total Sale Price are estimates based upon the assumption that payments will be made on the scheduled payment due date according to the installment schedule. The actual Finance Charge, Total of Payments, and Total Sale Price may vary depending upon the early or late payment of scheduled installments.

### ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| SALES TAX (Paid to Govt. Agencies) | | -$0.00 |
| CASH PRICE (Including Tax) | 1 | $27,000.00 |
| TOTAL DOWN PAYMENT (Sum of Trade-In & Cash Down Payment) | 2 | $2,500.00 |
| UNPAID BALANCE OF CASH PRICE (The amount credited to your account with us) | 3 | $24,500.00 |
| INSURANCE (Physical Damage Paid to Insurance Companies) | 4 | $0.00 |
| ORIGINATION FEES | 3A | $150.00 |
| OFFICIAL FEES (Paid to Public Officials) | 5 | $12.00 |
| AMOUNT FINANCED (Lines 3, 4, 4A, 5 & 5A (if Applicable )) The amount of credit provided to you | 5B | $24,662.00 |
| FINANCE CHARGE (Based on Line 6) The dollar amount the credit will cost you | 7 | $3,084.40 |
| TOTAL OF PAYMENTS (Lines 6 & 7) The amount you will have paid after you have made all of the Installment Payments as scheduled | 8 | $27,746.40 |
| ANNUAL PERCENTAGE RATE (The cost of your credit as a yearly rate) | | 5.99% |
| TOTAL SALE PRICE (Lines 1, 4, 4A, 5, 5A (if Applicable), & 7) The total price of your purchase on credit, including the Total Down Payment of $2,500.00 | | $30,246.40 |

4. **Prepayment.** You may prepay your obligations under this Contract in full at any time by paying the unpaid principal balance, any earned and unpaid finance charges (calculated using (a) the Date Finance Charge Begins, regardless of when we execute this Contract, and (b) the actuarial method or such other method as may be required by any applicable law), and any other amounts then due and payable (the "Account Balance"). The unpaid principal balance includes any origination fee.

5. **Security Interest; Missing Information.** You grant us a security interest in the Equipment (and all proceeds thereof) to secure all of your obligations under this Contract and any other obligations which you may have to us or any of our affiliates or assignees and you agree that any security interest you previously granted to us or our affiliates shall also secure your obligations under this Contract. Upon receipt of all amounts due and to become due under this Contract, we will release our security interest in the Equipment provided no event of default has occurred and is continuing. You agree to keep the Equipment free and clear of all liens and encumbrances, except those in our favor, and promptly notify us if a lien or encumbrance is placed or threatened against the Equipment. You irrevocably authorize us, at any time, to (a) insert or correct information on this Contract, including your correct legal name, serial numbers and Equipment descriptions; (b) submit notices and proofs of loss for any required insurance; (c) endorse your name on remittances for insurance and Equipment sale or lease proceeds; and (d) file a financing statement(s) which describes either the Equipment or all equipment currently or in the future financed by us.

6. **Equipment Maintenance, Operation and Use. You agree to** (a) USE THE EQUIPMENT ONLY FOR AGRICULTURAL, BUSINESS OR COMMERCIAL PURPOSES AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES; (b) operate and maintain the Equipment in accordance with all (1) applicable laws, ordinances and regulations, (2) manuals and other instructions issued by the manufacturer(s) and supplier(s), and (3) insurance policy terms and requirements; (c) perform (at your expense) all maintenance and repairs necessary to keep the Equipment in as good a condition as when delivered to you, reasonable wear excepted; (d) allow us and our agent(s) to inspect the Equipment and all of your records related to its use, maintenance and repair, at any reasonable time; and (e) not permit the Equipment to be used by, or to be in the possession of, anyone other than you or your employees.

| DOC3015 | 12/21/2007 | Settlement Nbr. 10577675 | Equipment Type: Agriculture Agricultural | J R M | Page 2 of 5 |
|---------|------------|--------------------------|------------------------------------------|-------|-------------|
| | | | Application ID 10577675  Version Number. 2 | Customer Initials | |

Revision Date: August, 2006



**7. Insurance.** You agree, at your cost, to maintain all-risk insurance coverage with respect to the Equipment for no less than its full replacement value, naming us (and our successor and assigns) as sole loss payee. You may choose who provides that insurance, but that insurance must be with companies and policies acceptable to us. Your obligation to insure the Equipment continues until all your other obligations under this Contract are satisfied. Each insurance policy must provide that (1) our interest in the policy will not be invalidated by any act, omission, breach or neglect of anyone other than us; (2) the insurer will give us at least 30 days' prior written notice before any cancellation of, non-renewal of, or material change to, the policy; and (3) such coverage shall be primary over any insurance purchased by us (or our subsidiaries).

Unless you provide us with evidence of the required insurance coverage's, we may, but are not required to, purchase insurance, at your expense, to protect our interests in the Equipment and charge you an insurance fee on which we may make a profit. This insurance may not (1) protect your interests; or (2) pay any claim that you make or any claim that is made against you in connection with the Equipment. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained the insurance required by this Contract. THE COST OF THE INSURANCE MAY BE MORE THAN THE COST OF THE INSURANCE YOU MAY BE ABLE TO OBTAIN ON YOUR OWN. THE COVERAGES OF THAT INSURANCE MAY BE DIFFERENT FROM THE COVERAGES OF INSURANCE YOU MAY BE ABLE TO OBTAIN ON YOUR OWN. You agree to pay us the cost of any insurance plus a $150 insurance placement and service fee. You will immediately pay that amount to us or we may, at our sole discretion, add that cost to the Account Balance and increase the required Installment Payments accordingly.

If a default occurs, you authorize us to cancel the insurance on the Equipment and apply any returned premiums to the Account Balance.

If the cost of the insurance was included in the Amount Financed, that insurance will terminate (a) if your debt to us is discharged, (b) if we release our security interest in the Equipment, (c) if a default occurs and we cancel the insurance, (d) if the Equipment is repossessed, (e) if the Floater Policy under which you purchased that insurance terminates, or (f) on the due date of the final scheduled Installment Payment.

**8. Loss or Damage.** Until all of your obligations under this Contract are satisfied, you are responsible for all risk of loss and damage, loss, theft, destruction or seizure of the Equipment (an "Event of Loss"). You must promptly notify us of any Event of Loss. If the Equipment can be repaired or replaced, you agree to promptly repair or replace the Equipment, at your cost, and the terms of this Contract will continue to apply. If the Equipment cannot be repaired or replaced, you agree to immediately pay us the Account Balance. Upon receipt of the Account Balance, we will release our security interest in the Equipment. All insurance proceeds must be paid directly to us, and we may apply any excess insurance proceeds to any other amounts you owe us or any of our affiliates.

**9. Default.** You will be in default if: (a) you fail to remit to us any Installment Payment or other payment when due; (b) you breach any other provision of this Contract; (c) you remove any Equipment from the United States; (d) a petition is filed by or against you or any guarantor under any bankruptcy, attachment, execution or insolvency law or you or any such guarantor make an assignment for the benefit of creditors; (e) a default occurs under any other agreement between you (or any of your affiliates) and us (or any of our affiliates); (f) you or any guarantor merges with or consolidates into another entity, sells substantially all its assets, dissolves or terminates its existence, or (if an individual) dies or becomes incompetent; (g) you fail to maintain the insurance required by this Contract; or (h) if for any reason, we deem the debt or the Equipment to be insecure. Time is of the essence under this Contract.

**10. Remedies.** If a default occurs, we may do one or more of the following: (a) recover from you, AS LIQUIDATED DAMAGES FOR LOSS OF BARGAIN AND NOT AS A PENALTY, the Account Balance as of the date of such default, without presentment or demand; (b) declare any other agreements between you and us in default; (c) terminate any of your rights (but none of your obligations) under this Contract and any other agreement between you and us (or any of our affiliates); (d) require you to deliver the Equipment to us in the manner outlined below, or take possession of the Equipment; (e) lease or sell the Equipment or any portion thereof at a public or private sale; (f) apply the net proceeds we receive from any sale, lease or other disposition of the Equipment (after deducting all of our costs and expenses) to your obligations under this Contract, with you remaining liable for any deficiency; (g) require you to reimburse and indemnify us for all losses, claims, damages and expenses of any kind or nature whatsoever incurred in connection with the Equipment or this Contract and/or the enforcement of our remedies hereunder including, without limitation, repossession, repair and collection costs, damage awards, attorneys' fees and court and bankruptcy fees and costs; (h) exercise any other remedy available at law or in equity, and (i) take on your behalf (at your expense) any action required by this Contract which you fail to take. These remedies are cumulative, are in addition to any other remedies provided for by law, and may be exercised concurrently or separately. Any failure or delay by us to exercise any right shall not operate as a waiver of any other right or future right. In no event will the costs and expenses referred to in this section be more than those allowed by law.

If a default occurs, all Equipment must be delivered to the place designated by us, at your expense and in satisfactory condition, along with all use, maintenance and repair records. Equipment is in satisfactory condition if it is in as good a condition as when the Equipment was delivered to you, reasonable wear excepted, as determined by us in our sole discretion.

**11. Assignment.** You will not assign, pledge or otherwise transfer any of your rights or interests in this Contract or any Equipment without our prior written consent. Any assignment without our consent will be void. We may assign this Contract or our interest in the Equipment at any time without notice to you and without your consent. We may provide information about you to any prospective assignee or participant. You agree not to assert against our assignee any claims, offsets or defenses which you may have against us.

| | 12/21/2007 | Settlement No: 10577675 | Equipment Type Agriculture Agricultural | | |
|---|---|---|---|---|---|
| DOC3015 | | | Application ID. 10577675   Version Number 2 | Customer Initials | Page 3 of 5 |

Revision Date August, 2006



(Page 6 of 11)

**12. Representations and Warranties.** You represent, warrant and covenant to us so long as this Contract is in effect, that: (a) you will not change your name without giving us at least 30 days' prior written notice; (b) each document you sign and deliver to us is duly authorized, executed and delivered by you, and is your valid, legal and binding agreement, enforceable in accordance with its terms; (c) the execution, delivery and performance by you of this Contract does not (and will not) violate any applicable law or breach any order of court or other governmental agency, or of any undertaking you are a party to or by which you or any of your properties are bound; (d) you will comply with all applicable laws, ordinances and regulations; (e) upon execution of this Contract, the Seller shall have good and marketable title to any trade-in equipment free and clear of all liens and encumbrances whatsoever, (f) all information you have given to us is true, accurate and complete; (g) since the date of the most recent financial information given to us, no material adverse change in your business, assets, or prospects has occurred; (h) you will promptly deliver to us such financial statements, reports and other information as we may request; (i) the Equipment was selected by you; (j) the Equipment (including all manufacturer manuals and instructions) has been delivered to, and examined by, you; (k) the safe operation and the proper servicing of the Equipment were explained to you; (l) you received the written warranty applicable to the Equipment and understand that your rights under the written warranty may be limited; (m) the Equipment is unconditionally and irrevocably accepted by you as being suitable for its intended use; (n) the Equipment is in good condition and repair (operating and otherwise); (o) the Equipment shall be used only for the purpose indicated herein, will remain in your possession and will not be sold, rented or leased; and (p) you will pay all taxes assessed on the Equipment.

Unless you are an individual, you also represent, warrant and covenant to us that: (a) you are and will remain duly organized, validly existing and in good standing under the laws of your jurisdiction of organization; (b) you are qualified to do business under the laws of all other jurisdictions where qualification is required or advisable; (c) you will not change your jurisdiction of organization or organization type without at least 30 days' prior written notice to us; and (d) the execution, delivery and performance by you of this Contract will not breach any provision of your organizational documents.

If you are an individual, you agree not to move your residence to a different county or state without at least 30 days' prior written notice to us.

**13. Governing Law; Jurisdiction; Venue.** THIS CONTRACT WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF IOWA, WHERE THIS CONTRACT IS ACCEPTED AND ENTERED INTO, except for its conflict of laws provisions. You irrevocably submit to the non-exclusive jurisdiction and venue of federal and state courts located in Des Moines, Iowa and will not claim it is an inconvenient forum for legal action. YOU AND WE IRREVOCABLY WAIVE ANY RIGHT YOU AND WE MAY HAVE TO A JURY TRIAL. However, you acknowledge that any Iowa state law compulsory mediation requirements will apply to this agreement or the Equipment only if you are a resident of the State of Iowa.

**14. Miscellaneous.** WE HAVE NOT MADE, AND DO NOT MAKE, ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE EQUIPMENT'S MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY, OR OTHERWISE. WE ARE NOT LIABLE FOR CONSEQUENTIAL OR SPECIAL DAMAGES. You acknowledge that the Seller of the Equipment is not an agent of ours, or authorized to act for or bind us. You agree not to withhold any amount you owe us if you believe you have a claim against us, the Seller or any manufacturer(s) of the Equipment, but to pursue that claim independently. Any claim you have against us must be made within two years after the event that caused it. All notices must be in writing and will be deemed given 5 days after mailing to the intended recipient at its address indicated above, unless changed by a notice given in accordance with this Section. This Contract supersedes and replaces all prior understandings and communications (oral or written) concerning the subject matter thereof. No part of this Contract can be amended, waived or terminated except by a writing signed by both you and us. This Contract may be signed in separate counterparts that, together, will constitute one document. A paper or facsimile transmission copy of your signature or an electronic signature shall constitute an original signature under applicable law for all purposes. If a court finds any part of this Contract to be invalid or unenforceable, the remainder of this Contract will remain in effect. You permit us to monitor and record telephone conversations between you and us. All of our rights shall remain in effect after the expiration or termination of this Contract.

You and we intend to comply with all applicable laws. In no event will we charge or collect any amounts in excess of those allowed by applicable law. In the event any amount in excess of that allowed by law is charged or recovered, any such charge will be deemed limited by the amount legally allowed and any amount received by us in excess of that legally allowed will be applied by us to the payment of amounts legally allowed under this Contract, or refunded to you.

THE TERMS OF THIS CONTRACT SHOULD BE READ CAREFULLY BEFORE SIGNING BECAUSE ONLY THESE WRITTEN TERMS ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES MAY BE LEGALLY ENFORCED. BY SIGNING THIS CONTRACT, YOU AGREE TO THE TERMS ON ALL PAGES. THIS CONTRACT IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN YOU AND US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

I agree that I have received a completely filled in copy of this Agreement.

DOC3015    12/21/2007    Settlement Nbr: 10577675    Equipment Type: Agriculture Agricultural    Application ID: 10577675    Version Number: 2    Customer Initials     Page 4 of 5

Revision Date: August, 2006

JAMES R MCADAMS SR

(DATE SIGNED) 12-20-07

DATE AGREEMENT SIGNED: 12-20-07

Accepted By: **DEERE & COMPANY** (Lender)
6400 NW 86th Street Johnston, IA 50131-6600

By: _____
(AUTHORIZED SIGNATURE)

1-7-08

12/21/2007    Settlement No: 10577675    Equipment Type: Agriculture Agricultural
Application ID: 10577675    Version Number: 2

DOC3015

Revision Date: August, 2006

Customer Initials: JRM

Page 5 of 5



**JOHN DEERE CREDIT**

Application ID: 10742689
Version Number: 5
**FIXED RATE CONTRACT**
AG/C&CE Business or Commercial Use

## LOAN CONTRACT - SECURITY AGREEMENT

Contract Begin Date: 01/30/2009

| SELLER'S NAME AND ADDRESS | DEALER NUMBER | PHONE NUMBER |
|---|---|---|
| CAHALL BROS INC 50 CAHALL BROTHERS LANE GEORGETOWN, OH 45121 | 05-0185 | 937-378-6439 |

**PHYSICAL DAMAGE INSURANCE REQUIRED: If you elect Physical Damage Insurance below, such insurance does not include liability insurance coverage for bodily injury or property damage caused to others.**

| INSURANCE DISCLOSURES: You may obtain property insurance from any agent that is acceptable to us. Physical Damage Insurance will not be provided unless you sign at the right and the premium is indicated. | TERM IN MONTHS | TOTAL PREMIUM | By signing below, you want Physical Damage Insurance and agree to pay the premium. (Sign in this box) x |
|---|---|---|---|

| BORROWER'S NAME AND PHYSICAL ADDRESS | BORROWER'S SOC. SEC. NUMBER | BORROWER'S PHONE NO. | TYPE OF BUSINESS |
|---|---|---|---|
| JAMES R MCADAMS SR 500 LANE RD WEST UNION, OH 45693-9440 | | 937-549-2952 | |
| BORROWER RESIDES IN (County/State) ADAMS, OH | | BORROWER AGREES TO KEEP GOODS IN (County/State) ADAMS, OH | |

**1. Parties.** This Loan Contract-Security Agreement ("Contract") is entered into between the Deere & Company ("we", "us" or "our") and the borrower(s) indicated above ("you" or "your"). If more than one borrower is indicated, each borrower shall be jointly and severally liable for all of the obligations under this Contract.

**2. Loan.** You hereby apply for a loan in the Amount Financed shown below, which, if accepted by us, the loan will be (a) subject to the terms and conditions set forth in this Contract, and (b) used to finance the balance due on the purchase from the Seller of the equipment and/or services described below (the "Equipment"). All attachments and accessories itemized on this Contract and all replacements, parts and repairs to the Equipment shall form part of the Equipment.

**3. Installment Payments.** In addition to any down payment, you agree to pay us the Total of Payments by remitting each of the Installment Payments on or before the due dates indicated. This Contract is not accepted by us until we sign it, even if you have made a payment to us. You agree to remit to us the Installment Payments and all other amounts when due and payable each Billing Period, even if we do not send you a bill or an invoice. **YOUR PAYMENT OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL, AND ARE NOT SUBJECT TO CANCELLATION, REDUCTION OR SETOFF FOR ANY REASON WHATSOEVER.** For any scheduled payment which is not received by its due date, you agree to pay us interest on the unpaid amount at a rate of 20% per annum on that scheduled payment, but in no event more than the maximum lawful rate, from the due date until paid. Restrictive endorsements on checks you send to us will not change or reduce your obligations to us. We will not lose any rights if we accept late or partial payments or delay enforcing your rights under this Contract. If a check or electronic payment authorization you give us is dishonored upon first presentment, you agree to pay us a fee of $25.00, or the maximum permitted by law, whichever is less. Installment Payments and other payments, including proceeds of insurance or any sale of the Equipment, may be applied, at our discretion and in spite of any instructions you may provide, to any obligation you may have to us or any of our affiliates. If the total of all payments made by you exceeds the total of all amounts due under this Contract by less than $25.00, we may retain such excess.

| EQUIPMENT PURCHASED | | | | | |
|---|---|---|---|---|---|
| QTY. | NEW USED | MFR. | MODEL | EQUIPMENT DESCRIPTION | AMOUNT |
| 1 | NEW | JD | 50D | 50DXFF Compact Excavator | $52,000.00 |
| PRODUCT ID NO. FF050DX270349 - 50D EXCAVATOR WITH 18" & ADAPTER | | | | | |
| 1 | NEW | JD | 332 | CT332 Compact Track Loader | $48,500.00 |
| PRODUCT ID NO. T0332TB129820 - CT332 COMPACT TRACK LOADER | | | | | |
| 1 | NEW | JD | RC78 | RC78 Rotary Cutter | $7,000.00 |
| PRODUCT ID NO. TORC78X110010 - RC78 ROTARY CUTTER | | | | | |
| 1 | NEW | JD | PA30 | PA30 Auger | $2,500.00 |
| PRODUCT ID NO. T09A30X700665 - PA30 WITH 9"&12"AUGERS | | | | | |

| DOC3015 | 1/30/2009 | Settlement Nbr. 10742689 | Equipment Type: Agriculture Agricultural Application ID: 10742689  Version Number: 5 | Customer Initials | RECEIVED FEB 11 2009 Page 1 of 5 |
|---|---|---|---|---|---|

Revision Date: August, 2006

DEERE & CO.



**(EX. E - 7542)**

### TRADE-IN and CASH DOWN PAYMENT

| QTY. | MFR. | MODEL | DESCRIPTION OF TRADE-IN (From Purchase Order) | PRODUCT ID NO. | AMOUNT |
|------|------|-------|-----------------------------------------------|----------------|--------|
|      |      |       |                                               |                |        |

| | |
|---|---|
| TOTAL TRADE-IN: | $0.00 |
| CASH DOWN PAYMENT: | $20,000.00 |
| RENTAL APPLIED: | $0.00 |
| TOTAL TRADE-IN PLUS CASH DOWN: | $20,000.00 |

### INSTALLMENT PAYMENTS

**DATE FINANCE CHARGE BEGINS: January 30, 2009**

The first Installment Payment Due Date is March 1, 2009 and each successive Installment Payment is due on the same day of the Month thereafter, (the "Billing Period"), unless otherwise provided below:

| NUMBER OF PAYMENTS | AMOUNT OF EACH PAYMENT | DUE DATE |
|--------------------|------------------------|----------|
| 60 | $1,697.79 | March 1, 2009 |

The amounts shown below as Finance Charge, Total of Payments and Total Sale Price are estimates based upon the assumption that payments will be made on the scheduled payment due date according to the installment schedule. The actual Finance Charge, Total of Payments, and Total Sale Price may vary depending upon the early or late payment of scheduled installments.

### ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| SALES TAX (Paid to Govt. Agencies) | | $0.00 |
| CASH PRICE (Including Tax) | 1 | $110,000.00 |
| TOTAL DOWN PAYMENT (Sum of Trade-In & Cash Down Payment) | 2 | $20,000.00 |
| UNPAID BALANCE OF CASH PRICE (The amount credited to your account with us) | 3 | $90,000.00 |
| INSURANCE (Physical Damage Paid to Insurance Companies) | 4 | $0.00 |
| ORIGINATION FEES | 4A | $150.00 |
| OFFICIAL FEES (Paid to Public Officials) | 5 | $12.00 |
| AMOUNT FINANCED (Lines 3, 4, 4A, 5 & 5A (If Applicable )) The amount of credit provided to you. | 6 | $90,162.00 |
| FINANCE CHARGE (Based on Line 6) The dollar amount the credit will cost you. | 7 | $11,705.40 |
| TOTAL OF PAYMENTS (Lines 6 & 7) The amount you will have paid after you have made all of the Installment Payments as scheduled. | 8 | $101,867.40 |
| ANNUAL PERCENTAGE RATE (The cost of your credit as a yearly rate) | | 4.90% |
| TOTAL SALE PRICE (Lines 1, 4, 4A, 5, 5A (if Applicable), & 7) The total price of your purchase on credit, including the Total Down Payment of $20,000.00. | | $121,867.40 |

**4. Prepayment.** You may prepay your obligations under this Contract in full at any time by paying the unpaid principal balance, any earned and unpaid finance charges (calculated using (a) the Date Finance Charge Begins, regardless of when we execute this Contract, and (b) the actuarial method or such other method as may be required by any applicable law), and any other amounts then due and payable (the "Account Balance"). The unpaid principal balance includes any origination fee.

**5. Security Interest; Missing Information.** You grant us a security interest in the Equipment (and all proceeds thereof) to secure all of your obligations under this Contract and any other obligations which you may have to us or any of our affiliates or assignees and you agree that any security interest you previously granted to us or our affiliates shall also secure your obligations under this Contract. Upon receipt of all amounts due and to become due under this Contract, we will release our security interest in the Equipment provided no event of default has occurred and is continuing. You agree to keep the Equipment free and clear of all liens and encumbrances, except those in our favor, and promptly notify us if a lien or encumbrance is placed or threatened against the Equipment. You irrevocably authorize us, at any time, to (a) insert or correct information on this Contract, including your correct legal name, serial numbers and Equipment descriptions; (b) submit notices and proofs of loss for any required insurance; (c) endorse your name on remittances for insurance and Equipment sale or lease proceeds; and (d) file a financing statement(s) which describes either the Equipment or all equipment currently or in the future financed by us.

**6. Equipment Maintenance, Operation and Use.** You agree to (a) USE THE EQUIPMENT ONLY FOR AGRICULTURAL, BUSINESS OR COMMERCIAL PURPOSES AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES; (b) operate and maintain the Equipment in accordance with all (1) applicable laws, ordinances and regulations, (2) manuals and other instructions issued by the manufacturer(s) and supplier(s), and (3) insurance policy terms and requirements; (c) perform (at your expense) all maintenance and repairs necessary to keep the Equipment in as good a condition as when delivered to you, reasonable wear excepted; (d) allow us and our agent(s) to inspect the Equipment and all of your records related to its use, maintenance and repair, at any reasonable time; and (e) not permit the Equipment to be used by, or to be in the possession of, anyone other than you or your employees.

| | | | | | |
|---|---|---|---|---|---|
| DOC3015 | 1/30/2009 | Settlement Nbr: 10742689 | Equipment Type: Agriculture Agricultural Application ID: 10742689 Version Number: 5 |  Customer Initials | Page 2 of 5 |

Revision Date: August, 2006

**7. Insurance.** You agree, at your cost, to maintain all-risk insurance coverage with respect to the Equipment for no less than its full replacement value, naming us (and our successor and assigns) as sole loss payee. You may choose who provides that insurance, but that insurance must be with companies and policies acceptable to us. Your obligation to insure the Equipment continues until all your other obligations under this Contract are satisfied. Each insurance policy must provide that (1) our interest in the policy will not be invalidated by any act, omission, breach or neglect of anyone other than us; (2) the insurer will give us at least 30 days' prior written notice before any cancellation of, non-renewal of, or material change to, the policy; and (3) such coverage shall be primary over any insurance purchased by us (or our subsidiaries).

Unless you provide us with evidence of the required insurance coverage's, we may, but are not required to, purchase insurance, at your expense, to protect our interests in the Equipment and charge you an insurance fee on which we may make a profit. This insurance may not (1) protect your interests; or (2) pay any claim that you make or any claim that is made against you in connection with the Equipment. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained the insurance required by this Contract. **THE COST OF THE INSURANCE MAY BE MORE THAN THE COST OF THE INSURANCE YOU MAY BE ABLE TO OBTAIN ON YOUR OWN. THE COVERAGES OF THAT INSURANCE MAY BE DIFFERENT FROM THE COVERAGES OF INSURANCE YOU MAY BE ABLE TO OBTAIN ON YOUR OWN.** You agree to pay us the cost of any insurance plus a $150 insurance placement and service fee. You will immediately pay that amount to us or we may, at our sole discretion, add that cost to the Account Balance and increase the required Installment Payments accordingly.

If a default occurs, you authorize us to cancel the insurance on the Equipment and apply any returned premiums to the Account Balance.

If the cost of the insurance was included in the Amount Financed, that insurance will terminate (a) if your debt to us is discharged, (b) if we release our security interest in the Equipment, (c) if a default occurs and we cancel the insurance, (d) if the Equipment is repossessed, (e) if the Floater Policy under which you purchased that insurance terminates, or (f) on the due date of the final scheduled Installment Payment.

**8. Loss or Damage.** Until all of your obligations under this Contract are satisfied, you are responsible for all risk of loss and damage, loss, theft, destruction or seizure of the Equipment (an "Event of Loss"). You must promptly notify us of any Event of Loss. If the Equipment can be repaired or replaced, you agree to promptly repair or replace the Equipment, at your cost, and the terms of this Contract will continue to apply. If the Equipment cannot be repaired or replaced, you agree to immediately pay us the Account Balance. Upon receipt of the Account Balance, we will release our security interest in the Equipment. All insurance proceeds must be paid directly to us, and we may apply any excess insurance proceeds to any other amounts you owe us or any of our affiliates.

**9. Default.** You will be in default if: (a) you fail to remit to us any Installment Payment or other payment when due; (b) you breach any other provision of this Contract; (c) you remove any Equipment from the United States; (d) a petition is filed by or against you or any guarantor under any bankruptcy, attachment, execution or insolvency law or you or any such guarantor make an assignment for the benefit of creditors; (e) a default occurs under any other agreement between you (or any of your affiliates) and us (or any of our affiliates); (f) you or any guarantor merges with or consolidates into another entity, sells substantially all its assets, dissolves or terminates its existence, or (if an individual) dies or becomes incompetent; (g) you fail to maintain the insurance required by this Contract; or (h) if for any reason, we deem the debt or the Equipment to be insecure. Time is of the essence under this Contract.

**10. Remedies.** If a default occurs, we may do one or more of the following: (a) recover from you, AS LIQUIDATED DAMAGES FOR LOSS OF BARGAIN AND NOT AS A PENALTY, the Account Balance as of the date of such default, without presentment or demand; (b) declare any other agreements between you and us in default; (c) terminate any of your rights (but none of your obligations) under this Contract and any other agreement between you and us (or any of our affiliates); (d) require you to deliver the Equipment to us in the manner outlined below, or take possession of the Equipment; (e) lease or sell the Equipment or any portion thereof at a public or private sale; (f) apply the net proceeds we receive from any sale, lease or other disposition of the Equipment (after deducting all of our costs and expenses) to your obligations under this Contract, with you remaining liable for any deficiency; (g) require you to reimburse and indemnify us for all losses, claims, damages and expenses of any kind or nature whatsoever incurred in connection with the Equipment or this Contract or the enforcement of our remedies hereunder including, without limitation, repossession, repair and collection costs, damage awards, attorneys' fees and court and bankruptcy fees and costs; (h) exercise any other remedy available at law or in equity; and (i) take on your behalf (at your expense) any action required by this Contract which you fail to take. These remedies are cumulative, are in addition to any other remedies provided for by law, and may be exercised concurrently or separately. Any failure or delay by us to exercise any right shall not operate as a waiver of any other right or future right. In no event will the costs and expenses referred to in this section be more than those allowed by law.

If a default occurs, all Equipment must be delivered to the place designated by us, at your expense and in satisfactory condition, along with all use, maintenance and repair records. Equipment is in satisfactory condition if it is in as good a condition as when the Equipment was delivered to you, reasonable wear excepted, as determined by us in our sole discretion.

**11. Assignment.** You will not assign, pledge or otherwise transfer any of your rights or interests in this Contract or any Equipment without our prior written consent. Any assignment without our consent will be void. We may assign this Contract or our interest in the Equipment at any time without notice to you and without your consent. We may provide information about you to any prospective assignee or participant. You agree not to assert against our assignee any claims, offsets or defenses which you may have against us.

| DOC3015 | 1/30/2009 | Settlement Nbr. 10742689 | Equipment Type: Agriculture Agricultural<br>Application ID: 10742689   Version Number: 5 | <br>Customer Initials | Page 3 of 5 |

Revision Date: August, 2006

**12. Representations and Warranties.** You represent, warrant and covenant to us so long as this Contract is in effect, that: (a) you will not change your name without giving us at least 30 days' prior written notice; (b) each document you sign and deliver to us is duly authorized, executed and delivered by you, and is your valid, legal and binding agreement, enforceable in accordance with its terms; (c) the execution, delivery and performance by you of this Contract does not (and will not) violate any applicable law or breach any order of court or other governmental agency, or of any undertaking you are a party to or by which you or any of your properties are bound; (d) you will comply with all applicable laws, ordinances and regulations; (e) upon execution of this Contract, the Seller shall have good and marketable title to any trade-in equipment free and clear of all liens and encumbrances whatsoever, (f) all information you have given to us is true, accurate and complete; (g) since the date of the most recent financial information given to us, no material adverse change in your business, assets, or prospects has occurred; (h) you will promptly deliver to us such financial statements, reports and other information as we may request; (i) the Equipment was selected by you; (j) the Equipment (including all manufacturer manuals and instructions) has been delivered to, and examined by, you; (k) the safe operation and the proper servicing of the Equipment were explained to you; (l) you received the written warranty applicable to the Equipment and understand that your rights under the written warranty may be limited; (m) the Equipment is unconditionally and irrevocably accepted by you as being suitable for its intended use; (n) the Equipment is in good condition and repair (operating and otherwise); (o) the Equipment shall be used only for the purpose indicated herein, will remain in your possession and will not be sold, rented or leased; and (p) you will pay all taxes assessed on the Equipment.

Unless you are an individual, you also represent, warrant and covenant to us that: (a) you are and will remain duly organized, validly existing and in good standing under the laws of your jurisdiction of organization; (b) you are qualified to do business under the laws of all other jurisdictions where qualification is required or advisable; (c) you will not change your jurisdiction of organization or organization type without at least 30 days' prior written notice to us; and (d) the execution, delivery and performance by you of this Contract will not breach any provision of your organizational documents.

If you are an individual, you agree not to move your residence to a different county or state without at least 30 days' prior written notice to us.

**13. Governing Law; Jurisdiction; Venue.** THIS CONTRACT WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF IOWA, WHERE THIS CONTRACT IS ACCEPTED AND ENTERED INTO, except for its conflict of laws provisions. You irrevocably submit to the non-exclusive jurisdiction and venue of federal and state courts located in Des Moines, Iowa and will not claim it is an inconvenient forum for legal action. YOU AND WE IRREVOCABLY WAIVE ANY RIGHT YOU AND WE MAY HAVE TO A JURY TRIAL. However, you acknowledge that any Iowa state law compulsory mediation requirements will apply to this agreement or the Equipment only if you are a resident of the State of Iowa.

**14. Miscellaneous.** WE HAVE NOT MADE, AND DO NOT MAKE, ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE EQUIPMENT'S MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY, OR OTHERWISE. WE ARE NOT LIABLE FOR CONSEQUENTIAL OR SPECIAL DAMAGES. You acknowledge that the Seller of the Equipment is not an agent of ours, or authorized to act for or bind us. You agree not to withhold any amount you owe us if you believe you have a claim against us, the Seller or any manufacturer(s) of the Equipment, but to pursue that claim independently. Any claim you have against us must be made within two years after the event that caused it. All notices must be in writing and will be deemed given 5 days after mailing to the intended recipient at its address indicated above, unless changed by a notice given in accordance with this Section. This Contract supersedes and replaces all prior understandings and communications (oral or written) concerning the subject matter thereof. No part of this Contract can be amended, waived or terminated except by a writing signed by both you and us. This Contract may be signed in separate counterparts that, together, will constitute one document. A paper or facsimile transmission copy of your signature or an electronic signature shall constitute an original signature under applicable law for all purposes. If a court finds any part of this Contract to be invalid or unenforceable, the remainder of this Contract will remain in effect. You permit us to monitor and record telephone conversations between you and us. All of our rights shall remain in effect after the expiration or termination of this Contract.

You and we intend to comply with all applicable laws. In no event will we charge or collect any amounts in excess of those allowed by applicable law. In the event any amount in excess of that allowed by law is charged or recovered, any such charge will be deemed limited by the amount legally allowed and any amount received by us in excess of that legally allowed will be applied by us to the payment of amounts legally allowed under this Contract, or refunded to you.

**THE TERMS OF THIS CONTRACT SHOULD BE READ CAREFULLY BEFORE SIGNING BECAUSE ONLY THESE WRITTEN TERMS ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES MAY BE LEGALLY ENFORCED. BY SIGNING THIS CONTRACT, YOU AGREE TO THE TERMS ON ALL PAGES. THIS CONTRACT IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN YOU AND US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.**

I agree that I have received a completely filled in copy of this Agreement.

DOC3015    1/30/2009    Settlement No: 10742689    Equipment Type: Agriculture Agricultural    Application ID: 10742689    Version Number: 5     Customer Initials    Page 4 of 5

Revision Date: August, 2008



x _James R McAdams S_    _1-30-09_
JAMES R MCADAMS SR      (DATE SIGNED)

DATE AGREEMENT SIGNED:   _1-30-09_
Accepted By: **DEERE & COMPANY** (Lender)
6400 NW 86th Street, Johnston, IA 50131-6600
By: _____
      *(AUTHORIZED SIGNATURE)*

| DOC3015 | 1/30/2009 | Settlement Nbr: 10742689 | Equipment Type: Agriculture Agricultural |  | Page 5 of 5 |
|---|---|---|---|---|---|
| | | | Application ID: 10742689   Version Number: 5 | Customer Initials | |

Revision Date: August, 2006

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖



**JOHN DEERE CREDIT**

RECEIVED
AUG 1 6 2010
DEERE & CO.

3229

Application ID: 10956544
Version Number: 4
FIXED RATE CONTRACT
AG/C&CE Business or Commercial Use

## LOAN CONTRACT - SECURITY AGREEMENT

Contract Begin Date : 08/05/2010

| *SELLER'S NAME AND ADDRESS* | DEALER NUMBER | PHONE NUMBER |
|---|---|---|
| CAHALL BROS INC<br>50 CAHALL BROTHERS LANE<br>GEORGETOWN, OH 45121 | 05-0185 | 937-378-6439 |

| *BORROWER'S NAME AND PHYSICAL ADDRESS* | BORROWER'S SOC. SEC. NUMBER | BORROWER'S PHONE NO. | TYPE OF BUSINESS |
|---|---|---|---|
| JAMES R MCADAMS SR<br>500 LANE RD<br>WEST UNION, OH 45693-9440 | ***-**-1541 | 937-549-2952 | |
| BORROWER RESIDES IN (County/State)<br>ADAMS, OH | | BORROWER AGREES TO KEEP GOODS IN (County/State)<br>ADAMS, OH | |

**1. Parties.** This Loan Contract-Security Agreement ("Contract") is entered into between Deere & Company ("we", "us" or "our") and the borrower(s) indicated above ("you" or "your"). If more than one borrower is indicated, each borrower shall be jointly and severally liable for all of the obligations under this Contract.

**2. Loan.** You hereby apply for a loan in the Amount Financed shown below, which, if accepted by us, the loan will be (a) subject to the terms and conditions set forth in this Contract, and (b) used to finance the balance due on the purchase from the Seller of the equipment and/or services described below (the "Equipment"). All attachments and accessories itemized on this Contract and all replacements, parts and repairs to the Equipment shall form part of the Equipment.

**3. Installment Payments.** In addition to any down payment, you agree to pay us the Amount Financed, together with finance charges from the Date Finance Charge Begins, at the Annual Percentage Rate, by remitting each of the Installment Payments on or before the due dates indicated. Any amounts applied to this Contract will be applied first to any late charges, any charges for dishonored checks and any other fees or costs due under this agreement, then to finance charges, computed on the date the payment is received and the remainder to the Amount Financed. You agree that your payments will be applied as of the date of receipt if received by 11:00 a.m. Central Time Monday through Friday (otherwise next business day); but if payment is not accompanied by the payment stub, is not in the envelope we provided, includes other items such as other checks, staples or paper clips, or is not received at that location, credit may be delayed up to five days. This Contract is not accepted by us until we sign it, even if you have made a payment to us. You agree to remit to us the Installment Payments and all other amounts when due and payable each Billing Period, even if we do not send you a bill or an invoice. YOUR PAYMENT OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL, AND ARE NOT SUBJECT TO CANCELLATION, REDUCTION OR SETOFF FOR ANY REASON WHATSOEVER. For any scheduled payment which is not received by its due date, you agree to pay us interest on the unpaid amount at a rate of 20% per annum on that scheduled payment, but in no event more than the maximum lawful rate, from the due date until paid. Restrictive endorsements on checks you send to us will not change or reduce your obligations to us. We will not lose any rights if we accept late or partial payments or delay enforcing our rights under this Contract. If a check or electronic payment authorization you give us is dishonored upon first presentment, you agree to pay us a fee of $25.00, or the maximum amount permitted by law, whichever is less. Installment Payments and other payments, including proceeds of insurance or any sale of the Equipment, may be applied, at our discretion and in spite of any instructions you may provide, to any obligation you may have to us or any of our affiliates. If the total of all payments made by you exceeds the total of all amounts due under this Contract by less than $25.00, we may retain such excess.

| *EQUIPMENT PURCHASED* | | | | | |
|---|---|---|---|---|---|
| QTY. | NEW/ USED | MFR. | MODEL | EQUIPMENT DESCRIPTION | AMOUNT |
| 1 | NEW | JD | 322 | CT322 Compact Track Loader | $44,000.00 |
| PRODUCT ID NO.  T0322TB169040 | | | | | |

### THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE

| | | | | | |
|---|---|---|---|---|---|
| | 8/3/2010 | Settlement Nbr: 10956544 | Equipment Type: Agriculture  Agricultural | | |
| DOC8015 | | Application ID: 10958544 | Version Number: 4 | Customer Initials *JRM* | Page 1 of 5 |
| Revision Date: June 2009 | | | | | |



**(EX. G - 6168)**

**TRADE-IN and CASH DOWN PAYMENT**

| QTY. | MFR. | MODEL | DESCRIPTION OF TRADE-IN (From Purchase Order) | PRODUCT ID NO. | AMOUNT |
|------|------|-------|-----------------------------------------------|----------------|--------|
|      |      |       |                                               | TOTAL TRADE-IN: | $0.00 |
|      |      |       |                                               | CASH DOWN PAYMENT: | $10,000.00 |
|      |      |       |                                               | RENTAL APPLIED: | $0.00 |
|      |      |       |                                               | TOTAL TRADE-IN PLUS CASH DOWN: | $10,000.00 |

**INSTALLMENT PAYMENTS**

DATE FINANCE CHARGE BEGINS: August 5, 2010

The first Installment Payment Due Date is September 5, 2010 and each successive Installment Payment is due on the same day of the Month thereafter, (the "Billing Period"), unless otherwise provided below:

| NUMBER OF PAYMENTS | AMOUNT OF EACH PAYMENT | DUE DATE |
|--------------------|------------------------|----------|
| 60 | $643.65 | September 5, 2010 |

The amounts shown below as Finance Charge, Total of Payments and Total Sale Price are estimates based upon the assumption that payments will be made on the scheduled payment due date according to the installment schedule. The actual Finance Charge, Total of Payments, and Total Sale Price may vary depending upon the early or late payment of scheduled installments.

**ITEMIZATION OF AMOUNT FINANCED**

| | | |
|---|---|---|
| SALES TAX (Paid to Govt. Agencies) | | $0.00 |
| CASH PRICE (Including Tax) | 1 | $44,000.00 |
| TOTAL DOWN PAYMENT (Sum of Trade-In & Cash Down Payment) | 2 | $10,000.00 |
| UNPAID BALANCE OF CASH PRICE (The amount credited to your account with us) | 3 | $34,000.00 |
| INSURANCE (Physical Damage Paid to Insurance Companies) | 4 | $0.00 |
| ORIGINATION FEES | 4A | $175.00 |
| OFFICIAL FEES (Paid to Public Officials) | 5 | $12.00 |
| AMOUNT FINANCED (Lines 3, 4, 4A, 5 & 5A (if Applicable)) The amount of credit provided to you. | 6 | $34,187.00 |
| FINANCE CHARGE (Based on Line 6) The dollar amount the credit will cost you. | 7 | $4,432.00 |
| TOTAL OF PAYMENTS (Lines 6 & 7) The amount you will have paid after you have made all payments as scheduled. | 8 | $38,619.00 |
| ANNUAL PERCENTAGE RATE (The cost of your credit as a yearly rate) | | 4.90% |
| TOTAL SALE PRICE (Lines 1, 4, 4A, 5, 5A (if Applicable), & 7) The total price of your purchase on credit, including the Total Down Payment of $10,000.00. | | $48,619.00 |

**4. Prepayment.** You may prepay your obligations under this Contract in full at any time by paying the unpaid principal balance and any earned and unpaid finance charges. The unpaid principal balance includes any origination fee.

**5. Security Interest; Missing Information.** You grant us a security interest in the Equipment (and all proceeds thereof) to secure all of your obligations under this Contract and any other obligations which you may have to us or any of our affiliates or assignees, now or in the future and you agree that any security interest you previously granted to us or our affiliates shall also secure your obligations under this Contract. Upon receipt of all amounts due and to become due under this Contract, we will release our security interest in the Equipment provided no event of default has occurred and is continuing. You agree to keep the Equipment free and clear of all liens and encumbrances, except those in our favor, and promptly notify us if a lien or encumbrance is placed or threatened against the Equipment. You irrevocably authorize us, at any time, to (a) insert or correct information on this Contract, including your correct legal name, serial numbers and Equipment descriptions; (b) submit notices and proofs of loss for any required insurance; (c) endorse your name on remittances for insurance and Equipment sale or lease proceeds; and (d) file a financing statement(s) which describes either the Equipment or all equipment currently or in the future financed by us. You irrevocably authorize anyone in possession of information regarding the location, maintenance, operation and condition of the Equipment to provide all of that information to us upon our request.

**6. Equipment Maintenance, Operation and Use.** You agree to (a) USE THE EQUIPMENT ONLY FOR AGRICULTURAL, BUSINESS OR COMMERCIAL PURPOSES AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES; (b) operate and maintain the Equipment in accordance with all (1) applicable laws, ordinances and regulations, (2) manuals and other instructions issued by the manufacturer(s) and supplier(s), and (3) insurance policy terms and requirements; (c) perform (at your expense) all maintenance and repairs necessary to keep the Equipment in as good a condition as when delivered to you, reasonable wear excepted; (d) allow us and our agent(s) to inspect the Equipment and all of your records related to its use, maintenance and repair, at any reasonable time; and (e) not permit the Equipment to be used by, or to be in the possession of, anyone other than you or your employees.

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

| 8/3/2010 | Settlement Nbr: 10956544 | Equipment Type: Agriculture Agricultural | |
|----------|--------------------------|------------------------------------------|--|
| DOC8015 | Application ID: 10956544 | Version Number: 4   Customer Initials: | Page 2 of 5 |

Revision Date: June 2009



**7. Insurance.** You agree, at your cost, to maintain all-risk insurance coverage with respect to the Equipment for no less than its full replacement value, naming us (and our successor and assigns) as sole loss payee. You may choose who provides that insurance, but that insurance must be with companies and policies acceptable to us. Your obligation to insure the Equipment continues until all your other obligations under this Contract are satisfied. Each insurance policy must provide that (1) our interest in the policy will not be invalidated by any act, omission, breach or neglect of anyone other than us; (2) the insurer will give us at least 30 days' prior written notice before any cancellation of, non-renewal of, or material change to, the policy; and (3) such coverage shall be primary over any insurance purchased by us (or our affiliates).

Unless you provide us with evidence of the required insurance coverage's, we may, but are not required to, purchase insurance, at your expense, to protect our interests in the Equipment and charge you an insurance fee on which we may make a profit. This insurance may not (1) protect your interests; or (2) pay any claim that you make or any claim that is made against you in connection with the Equipment. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained the insurance required by this Contract. THE COST OF THE INSURANCE MAY BE MORE THAN THE COST OF THE INSURANCE YOU MAY BE ABLE TO OBTAIN ON YOUR OWN. THE COVERAGES OF THAT INSURANCE MAY BE DIFFERENT FROM THE COVERAGES OF INSURANCE YOU MAY BE ABLE TO OBTAIN ON YOUR OWN. You agree to pay us the cost of any insurance plus a $150 insurance placement and service fee. You will immediately pay that amount to us or we may, at our sole discretion, add that cost to the Account Balance and increase the required Installment Payments accordingly.

If a default occurs, you authorize us to cancel the insurance on the Equipment and apply any returned premiums to the Account Balance.

If the cost of the insurance was included in the Amount Financed, that insurance will terminate (a) if your debt to us is discharged, (b) if we release our security interest in the Equipment, (c) if a default occurs and we cancel the insurance, (d) if the Equipment is repossessed, (e) if the Floater Policy under which you purchased that insurance terminates, or (f) on the due date of the final scheduled Installment Payment.

**8. Loss or Damage.** Until all of your obligations under this Contract are satisfied, you are responsible for all risk of loss and damage, loss, theft, destruction or seizure of the Equipment (an "Event of Loss"). You must promptly notify us of any Event of Loss. If the Equipment can be repaired or replaced, you agree to promptly repair or replace the Equipment, at your cost, and the terms of this Contract will continue to apply. If the Equipment cannot be repaired or replaced, you agree to immediately pay us the Account Balance. Upon receipt of the Account Balance, we will release our security interest in the Equipment. All insurance proceeds must be paid directly to us, and we may apply any excess insurance proceeds to any other amounts you owe us or any of our affiliates.

**9. Default.** We may determine you to be in default if: (a) you fail to remit to us any Installment Payment or other payment when due; (b) you breach any other provision of this Contract; (c) you remove any Equipment from the United States; (d) a petition is filed by or against you or any guarantor under any bankruptcy, attachment, execution or insolvency law or you or any such guarantor make an assignment for the benefit of creditors; (e) a default occurs under any other agreement between you (or any of your affiliates) and us (or any of our affiliates); (f) you or any guarantor merges with or consolidates into another entity, sells substantially all its assets, dissolves or terminates its existence, or (if an individual) dies or becomes incompetent; (g) you fail to maintain the insurance required by this Contract; or (h) if for any reason, we deem the debt or the Equipment to be insecure. Time is of the essence under this Contract.

**10. Remedies.** If we determine that you are in default, we may do one or more of the following: (a) recover from you, AS LIQUIDATED DAMAGES FOR THE LOSS OF BARGAIN AND NOT AS A PENALTY, the Account Balance as of the date of such default, without presentment or demand; (b) declare any other agreements between you and us in default; (c) terminate any of your rights (but none of your obligations) under this Contract and any other agreement between you and us (or any of our affiliates); (d) require you to deliver the Equipment to us in the manner outlined below, or take possession of the Equipment; (e) lease or sell the Equipment or any portion thereof at a public or private sale; (f) apply the net proceeds we receive from any sale, lease or other disposition of the Equipment (after deducting all of our costs and expenses) to your obligations under this Contract, with you remaining liable for any deficiency; (g) require you to reimburse and indemnify us for all losses, claims, damages and expenses of any kind or nature whatsoever incurred in connection with the Equipment or this Contract and/or the enforcement of our remedies hereunder including, without limitation, repossession, repair and collection costs, damage awards, attorneys' fees and court and bankruptcy fees and costs; (h) exercise any other remedy available at law or in equity; and (i) take on your behalf (at your expense) any action required by this Contract which you fail to take. These remedies are cumulative, are in addition to any other remedies provided for by law, and may be

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**



| DOC8015 | 8/3/2010 | Settlement Nbr: 10956544 | Equipment Type: Agriculture Agricultural | Customer Initials: *JRM* | Page 3 of 5 |
|---|---|---|---|---|---|
| Revision Date: June 2009 | | Application ID: 10956544 | Version Number: 4 | | |

exercised concurrently or separately. Any failure or delay by us to exercise any right shall not operate as a waiver of any other right for future right. In no event will the costs and expenses referred to in this section be more than those allowed by law.

If we determine that you are in default, all Equipment must be delivered to the place designated by us, at your expense and in satisfactory condition, along with all use, maintenance and repair records. Equipment is in satisfactory condition if it is in as good a condition as when the Equipment was delivered to you, reasonable wear excepted, as determined by us in our sole discretion.

11. **Assignment.** You will not assign, pledge or otherwise transfer any of your rights or interests in this Contract or any Equipment without our prior written consent. Any assignment without our consent will be void. We may assign this Contract or our interest in the Equipment at any time without notice to you and without your consent. We may provide information about you to any prospective assignee or participant. You agree not to assert against our assignee any claims, offsets or defenses which you may have against us.

12. **Representations and Warranties.** You represent, warrant and covenant to us so long as this Contract is in effect, that: (a) you will not change your name without giving us at least 30 days' prior written notice; (b) each document you sign and deliver to us is duly authorized, executed and delivered by you, and is your valid, legal and binding agreement, enforceable in accordance with its terms; (c) the execution, delivery and performance by you of this Contract does not (and will not) violate any applicable law or breach any order of court or other governmental agency, or of any undertaking you are a party to or by which you or any of your properties are bound; (d) you will comply with all applicable laws, ordinances and regulations; (e) upon execution of this Contract, the Seller shall have good and marketable title to any trade-in equipment free and clear of all liens and encumbrances whatsoever, (f) all information you have given to us is true, accurate and complete; (g) since the date of the most recent financial information given to us, no material adverse change in your business, assets, or prospects has occurred; (h) you will promptly deliver to us such financial statements, reports and other information as we may request; (i) the Equipment was selected by you; (j) the Equipment (including all manufacturer manuals and instructions) has been delivered to, and examined by, you; (k) the safe operation and the proper servicing of the Equipment were explained to you; (l) you received the written warranty applicable to the Equipment and understand that your rights under the written warranty may be limited; (m) the Equipment is unconditionally and irrevocably accepted by you as being suitable for its intended use; (n) the Equipment is in good condition and repair (operating and otherwise); (o) the Equipment shall be used only for the purpose indicated herein, will remain in your possession and will not be sold, rented or leased; and (p) you will pay all taxes assessed on the Equipment.

Unless you are an individual, you also represent, warrant and covenant to us that: (a) you are and will remain duly organized, validly existing and in good standing under the laws of your jurisdiction of organization; (b) you are qualified to do business under the laws of all other jurisdictions where qualification is required or advisable; (c) you will not change your jurisdiction of organization or organization type without at least 30 days' prior written notice to us; and (d) the execution, delivery and performance by you of this Contract will not breach any provision of your organizational documents.

If you are an individual, you agree not to move your residence to a different county or state without at least 30 days' prior written notice to us.

13. **Governing Law; Jurisdiction; Venue.** THIS CONTRACT WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF IOWA, WHERE THIS CONTRACT IS ACCEPTED AND ENTERED INTO, except for its conflict of laws provisions. You irrevocably submit to the non-exclusive jurisdiction and venue of federal and state courts located in Des Moines, Iowa and will not claim it is an inconvenient forum for legal action. YOU AND WE IRREVOCABLY WAIVE ANY RIGHT YOU AND WE MAY HAVE TO A JURY TRIAL. However, you acknowledge that any Iowa state law compulsory mediation requirements will apply to this agreement or the Equipment only if you are a resident of the State of Iowa.

14. **Miscellaneous.** WE HAVE NOT MADE, AND DO NOT MAKE, ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE EQUIPMENT'S MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY, OR OTHERWISE. WE ARE NOT LIABLE FOR CONSEQUENTIAL OR SPECIAL DAMAGES. You acknowledge that the Seller of the Equipment is not an agent of ours, or authorized to act for or bind us. You agree not to withhold any amount you owe us if you believe you have a claim against us, the Seller or any manufacturer(s) of the Equipment, but to pursue that claim independently. Any claim you have against us must be made within two years after the event that caused it. All notices must be in writing and will be deemed given 5 days after mailing to the intended recipient at its address indicated above, unless changed by a notice given in accordance with this Section. This Contract supersedes and replaces all prior understandings and communications (oral or written) concerning the subject matter thereof. No part of this Contract can be amended, waived or terminated except by a writing signed by both you and us. This Contract may be signed in separate counterparts that, together, will constitute one document. A paper or facsimile transmission

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

| | 8/3/2010 | Settlement Nbr: 10956544 | Equipment Type: Agriculture Agricultural | | |
|---|---|---|---|---|---|
| DOC8015 | | Application ID: 10956544 | Version Number: 4 | Customer Initials: | Page 4 of 5 |

Revision Date: June 2009



copy of your signature or an electronic signature shall constitute an original signature under applicable law for all purposes. If a court finds any part of this Contract to be invalid or unenforceable, the remainder of this Contract will remain in effect. You permit us to monitor and record telephone conversations between you and us. You agree that by providing us any telephone number, including your mobile phone number, we and any debt collector we retain can contact you using that number, including calls using an automatic dialing and announcing device and prerecorded calls. All of our rights shall remain in effect after the expiration or termination of this Contract.

You and we intend to comply with all applicable laws. In no event will we charge or collect any amounts in excess of those allowed by applicable law. In the event any amount in excess of that allowed by law is charged or recovered, any such charge will be deemed limited by the amount legally allowed and any amount received by us in excess of that legally allowed will be applied by us to the payment of amounts legally allowed under this Contract, or refunded to you.

**THE TERMS OF THIS CONTRACT SHOULD BE READ CAREFULLY BEFORE SIGNING BECAUSE ONLY THESE WRITTEN TERMS ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES MAY BE LEGALLY ENFORCED. BY SIGNING THIS CONTRACT, YOU AGREE TO THE TERMS ON ALL PAGES. THIS CONTRACT IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN YOU AND US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.**

I agree that I have received a completely filled in copy of this Agreement.

DATE AGREEMENT SIGNED: 8-5-10

X _____ 8-5-10
JAMES R MCADAMS SR      (Date Signed)

Accepted By: Deere & Company (Lender)
6400 NW 86th Street, Johnston, IA 50131-6600

By: _____
(AUTHORIZED SIGNATURE)

---

THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE

| | | | | | | |
|---|---|---|---|---|---|---|
| DOC8015 | 8/3/2010 | Settlement Nbr: 10956544 | Equipment Type: Agriculture Agricultural | | Customer Initials: JRN | Page 5 of 5 |
| Revision Date: June 2009 | | Application ID: 10956544 | Version Number: 4 | | | |




## JOHN DEERE
### CREDIT

Application ID: 10745776
Version Number: 6
## FIXED RATE CONTRACT
C&F Business or Commercial Use

## RETAIL INSTALLMENT CONTRACT - SECURITY AGREEMENT

Contract Begin Date: 02/10/2009

| SELLER'S NAME AND ADDRESS | | |
|---|---|---|
| | DEALER NUMBER | PHONE NUMBER |
| LESLIE EQUIPMENT CO.<br>5775 US RTE 23 S<br>CHILLICOTHE, OH 45601 | 17-9614 | 740-663-5300 |

## PHYSICAL DAMAGE INSURANCE REQUIRED: If you elect Physical Damage Insurance below, such insurance does not include liability insurance coverage for bodily injury or property damage caused to others.

| INSURANCE DISCLOSURE: You may obtain property insurance from any agent that is acceptable to us. Physical Damage Insurance will not be provided unless you sign at the right and the premium is indicated. | TERM IN MONTHS | TOTAL PREMIUM | By signing below, you want Physical Damage Insurance and agree to pay the premium. (Sign in this box.)<br>X |
|---|---|---|---|

| BUYER'S NAME AND PHYSICAL ADDRESS | | | |
|---|---|---|---|
| CLAYTON RAILROAD CONSTRUCTION, LLC<br>500 LANE RD<br>WEST UNION, OH 45693-9440 | BUYER'S<br>TAX ID NUMBER | BUYER'S<br>PHONE NO.<br>937-549-2952 | TYPE OF<br>BUSINESS<br>Limited Liability Company |
| BUYER RESIDES IN (County/State)<br>ADAMS, OH | | BUYER AGREES TO KEEP GOODS IN (County/State)<br>ADAMS, OH | |
| NAME AND TITLE OF SIGNING OFFICER<br>JAMES R MCADAMS SR - Chief Executive Officer | | | |

| CO-BUYER'S NAME AND ADDRESS | | | |
|---|---|---|---|
| JAMES R MCADAMS SR<br>500 LANE RD<br>WEST UNION, OH 45693-9440 | CO-BUYER'S<br>SOC. SEC. NUMBER | CO-BUYER'S<br>PHONE NO.<br>937-549-2952 | TYPE OF<br>BUSINESS |

**1. Parties.** This Retail Installment Contract ("Contract") is entered into between the Seller ("we", "us" or "our") and the buyer(s) indicated above ("you" or "your"). If more than one buyer is indicated, each buyer shall be jointly and severally liable for all of the obligations under this Contract.

**2. Loan.** Having been quoted both a cash sale price and a time sale price for the equipment and/or services described below (the "Equipment"), you have elected to purchase the Equipment from us for that time sale price under the terms set forth in this Contract. All attachments and accessories itemized on this Contract and all replacements, parts and repairs to the Equipment shall form part of the Equipment.

**3. Installment Payments.** In addition to any down payment, you agree to pay us the Total of Payments by remitting each of the Installment Payments on or before the due dates indicated. This Contract is not accepted by us until we sign it, even if you have made a payment to us. You agree to remit to us the Installment Payments and all other amounts when due and payable each Billing Period, even if we do not send you a bill or an invoice. YOUR PAYMENT OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL, AND ARE NOT SUBJECT TO CANCELLATION, REDUCTION OR SETOFF FOR ANY REASON WHATSOEVER. For any scheduled payment which is not received by its due date, you agree to pay us interest on the unpaid amount at a rate of 20% per annum, on that scheduled payment, but in no event more than the maximum lawful rate, from the due date until paid. Restrictive endorsements on checks you send to us will not change or reduce your obligations to us. We will not lose any rights if we accept late or partial payments or delay enforcing your rights under this Contract. If a check or electronic payment authorization you give us is dishonored upon first presentment, you agree to pay us a fee of $25.00, or the maximum amount permitted by law, whichever is less. Installment Payments and other payments, including proceeds of insurance or any sale of the Equipment, may be applied, at our discretion and in spite of any instructions you may provide, to any obligation you may have to us or any assignee of this Contract or any affiliates of the assignee. If the total of all payments made by you exceeds the total of all amounts due under this Contract by less than $25.00, we may retain such excess.

| EQUIPMENT PURCHASED | | | | | |
|---|---|---|---|---|---|
| QTY. | NEW<br>USED | MFR. | MODEL | EQUIPMENT DESCRIPTION | AMOUNT |
| 1 | NEW | JD | 310 | 310SJ Wheel Loader Backhoe | $81,595.00 |
| PRODUCT ID NO. | | TO310SJ160937 | | | |

THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE

RECEIVED

| DOC4004 | 2/9/2009 | Settlement Nbr: 10745776 | Equipment Type: Construction & Forestry Commercial<br>Application ID: 10745776   Version Number: 6 | FEB 1 2 2009 Page 1 of 5 |
|---|---|---|---|---|

Revision Date: August, 2008

(EX. I - 8040)

| QTY. | MFR. | MODEL | DESCRIPTION OF TRADE-IN (From Purchase Order) | PRODUCT ID NO. | AMOUNT (Q |
|------|------|-------|-----------------------------------------------|----------------|-----------|

**TRADE-IN and CASH DOWN PAYMENT**

| | |
|---|---|
| TOTAL TRADE-IN: | $0.00 |
| CASH DOWN PAYMENT: | $2,529.65 |
| RENTAL APPLIED: | $7,500.00 |
| TOTAL TRADE-IN PLUS CASH DOWN: | $10,029.65 |

**INSTALLMENT PAYMENTS**

DATE FINANCE CHARGE BEGINS: February 10, 2009

The first Installment Payment Due Date is March 10, 2009 and each successive Installment Payment is due on the same day of the Month thereafter, (the "Billing Period"), unless otherwise provided below;

| NUMBER OF PAYMENTS | AMOUNT OF EACH PAYMENT | DUE DATE |
|--------------------|------------------------|----------|
| 60 | $1,394.08 | March 10, 2009 |

The amounts shown below as Finance Charge, Total of Payments and Total Sale Price are estimates based upon the assumption that payments will be made on the scheduled payment due date according to the installment schedule. The actual Finance Charge, Total of Payments, and Total Sale Price may vary depending upon the early or late payment of scheduled installments.

**ITEMIZATION OF AMOUNT FINANCED**

| | | |
|---|---|---|
| SALES TAX (Paid to Govt. Agencies) | | $0.00 |
| CASH PRICE (including Tax) | 1 | $81,395.00 |
| TOTAL DOWN PAYMENT (Sum of Trade-In & Cash Down Payment) | 2 | $10,029.65 |
| UNPAID BALANCE OF CASH PRICE (The amount credited to your account with us) | 3 | $71,365.35 |
| ORIGINATION FEES | 4A | $300.00 |
| OFFICIAL FEES (Paid to Public Officials) | 4B | $12.00 |
| INSURANCE (Physical Damage Paid to Insurance Companies) | 5 | $0.00 |
| AMOUNT FINANCED (Lines 3, 4A, 4B, & 5) The amount of credit provided to you. | 6 | $71,677.35 |
| FINANCE CHARGE (Based on Line 6) The dollar amount the credit will cost you. | 7 | $11,967.45 |
| TOTAL OF PAYMENTS (Lines 6 & 7) The amount you will have paid after you have made all of the Installment Payments as scheduled. | 8 | $83,644.80 |
| **ANNUAL PERCENTAGE RATE** (The cost of your credit as a yearly rate) | | 6.25% |
| TOTAL SALE PRICE (Lines 1, 4A, 4B, 5, & 7) The total price of your purchase on credit, including the Total Down Payment of $10,029.65. | | $93,674.45 |

**4. Prepayment.** You may prepay your obligations under this Contract in full at any time by paying the unpaid principal balance, any earned and unpaid finance charges (calculated using (a) the Date Finance Charge Begins, regardless of when we execute this Contract, and (b) the actuarial method or such other method as may be required by any applicable law), and any other amounts then due and payable (the "Account Balance"). The unpaid principal balance includes any origination fee.

**5. Security Interest; Missing Information.** You grant us a security interest in the Equipment (and all proceeds thereof) to secure all of your obligations under this Contract and any other obligations which you may have to us or any assignee of this Contract or any affiliate of that assignee and you agree that any security interest you previously granted to us or any assignee of this Contract or any affiliate of that assignee shall also secure your obligations under this Contract. Upon receipt of all amounts due and to become due under this Contract, we will release our security interest in the Equipment provided no event of default has occurred and is continuing. You agree to keep the Equipment free and clear of all liens and encumbrances, except those in our favor, and promptly notify us if a lien or encumbrance is placed or threatened against the Equipment. You irrevocably authorize us, at any time, to (a) insert or correct information on this Contract, including your correct legal name, serial numbers and Equipment descriptions; (b) submit notices and proofs of loss for any required insurance; (c) endorse your name on remittances for insurance and Equipment sale or lease proceeds; and (d) file a financing statement(s) which describes either the Equipment or all equipment currently or in the future financed by us.

**6. Equipment Maintenance, Operation and Use.** You agree to (a) USE THE EQUIPMENT ONLY FOR AGRICULTURAL, BUSINESS OR COMMERCIAL PURPOSES AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES; (b) operate and maintain the Equipment in accordance with all (1) applicable laws, ordinances and regulations, (2) manuals and other instructions issued by the manufacturer(s) and supplier(s), and (3) insurance policy terms and requirements; (c) perform (at your expense) all maintenance and repairs necessary to keep the Equipment in as good a condition as when delivered to you, reasonable wear excepted; (d) allow us and our agent(s) to inspect the Equipment and all of your records related to its use, maintenance and repair, at any reasonable time; and (e) not permit the Equipment to be used by, or to be in the possession of, anyone other than you or your employees.

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

**DOC4004**    2/9/2009   Settlement Nbr: 10745776   Equipment Type: Construction & Forestry Commercial   Application ID: 10745776   Version Number: 6     Page 2 of 5

Revision Date: August, 2008



**7. Insurance.** You agree, at your cost, to maintain all-risk insurance coverage with respect to the Equipment for no less than its full replacement value, naming us (and our successor and assigns) as sole loss payee. You may choose who provides that insurance, but that insurance must be with companies and policies acceptable to us. Your obligation to insure the Equipment continues until all your other obligations under this Contract are satisfied. Each insurance policy must provide that (1) our interest in the policy will not be invalidated by any act, omission, breach or neglect of anyone other than us; (2) the insurer will give us at least 30 days' prior written notice before any cancellation of, non-renewal of, or material change to, the policy; and (3) such coverage shall be primary over any insurance purchased by us (or our subsidiaries).

Unless you provide us with evidence of the required insurance coverage's, we may, but are not required to, purchase insurance, at your expense, to protect our interests in the Equipment and charge you an insurance fee on which we may make a profit. This insurance may not (1) protect your interests; or (2) pay any claim that you make or any claim that is made against you in connection with the Equipment. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained the insurance required by this Contract. **THE COST OF THE INSURANCE MAY BE MORE THAN THE COST OF THE INSURANCE YOU MAY BE ABLE TO OBTAIN ON YOUR OWN. THE COVERAGES OF THAT INSURANCE MAY BE DIFFERENT FROM THE COVERAGES OF INSURANCE YOU MAY BE ABLE TO OBTAIN ON YOUR OWN.** You agree to pay us the cost of any insurance plus a $150 insurance placement and service fee. You will immediately pay that amount to us or we may, at our sole discretion, add that cost to the Account Balance and increase the required installment Payments accordingly.

If a default occurs, you authorize us to cancel the insurance on the Equipment and apply any returned premiums to the Account Balance. If the cost of the insurance was included in the Amount Financed, that insurance will terminate (a) if your debt to us is discharged, (b) if we release our security interest in the Equipment, (c) if a default occurs and we cancel the insurance, (d) if the Equipment is repossessed, (e) if the Floater Policy under which you purchased that insurance terminates, or (f) on the due date of the final scheduled installment Payment.

**8. Loss or Damage.** Until all of your obligations under this Contract are satisfied, you are responsible for all risk of loss and damage, loss, theft, destruction or seizure of the Equipment (an "Event of Loss"). You must promptly notify us of any Event of Loss. If the Equipment can be repaired or replaced, you agree to promptly repair or replace the Equipment, at your cost, and the terms of this Contract will continue to apply. If the Equipment cannot be repaired or replaced, you agree to immediately pay us the Account Balance. Upon receipt of the Account Balance, we will release our security interest in the Equipment. All insurance proceeds must be paid directly to us, and we may apply any excess insurance proceeds to any other amounts you owe us or any assignee of this Contract or any affiliate of that assignee.

**9. Default.** You will be in default if: (a) you fail to remit to us any Installment Payment or other payment when due; (b) you breach any other provision of this Contract; (c) you remove any Equipment from the United States; (d) a petition is filed by or against you or any guarantor under any bankruptcy, attachment, execution or insolvency law or you or any such guarantor make an assignment for the benefit of creditors; (e) a default occurs under any other agreement between you (or any of your affiliates) and us (or any assignee of this Contract or any affiliate of that assignee.); (f) you or any guarantor merges with or consolidates into another entity, sells substantially all its assets, dissolves or terminates its existence, or (if an individual) dies or becomes incompetent; (g) you fail to maintain the insurance required by this Contract; or (h) if for any reason, we deem the debt or the Equipment to be insecure. Time is of the essence under this Contract.

**10. Remedies.** If a default occurs, we may do one or more of the following: (a) recover from you, AS LIQUIDATED DAMAGES FOR LOSS OF BARGAIN AND NOT AS A PENALTY, the Account Balance as of the date of such default, without presentment or demand; (b) declare any other agreements between you and us in default; (c) terminate any of your rights (but none of your obligations) under this Contract and any other agreement between you and us (or any assignee of this Contract or any affiliate of that assignee.); (d) require you to deliver the Equipment to us in the manner outlined below, or take possession of the Equipment; (e) lease or sell the Equipment or any portion thereof at a public or private sale; (f) apply the net proceeds we receive from any sale, lease or other disposition of the Equipment (after deducting all of our costs and expenses) to your obligations under this Contract, with you remaining liable for any deficiency; (g) require you to reimburse and indemnify us for all losses, claims, damages and expenses of any kind or nature whatsoever incurred in connection with the Equipment or this Contract and/or the enforcement of our remedies hereunder including, without limitation, repossession, repair and collection costs, damage awards, attorneys' fees and court and bankruptcy fees and costs; (h) exercise any other remedy available at law or in equity; and (i) take on your behalf (at your expense) any action required by this Contract which you fail to take. These remedies are cumulative, are in addition to any other remedies provided for by law, and may be exercised concurrently or separately. Any failure or delay by us to exercise any right shall not operate as a waiver of any other right or future right. In no event will the costs and expenses referred to in this section be more than those allowed by law.

If a default occurs, all Equipment must be delivered to the place designated by us, at your expense and in satisfactory condition, along with all use, maintenance and repair records. Equipment is in satisfactory condition if it is in as good a condition as when the Equipment was delivered to you, reasonable wear excepted, as determined by us in our sole discretion.

**11. Assignment.** You will not assign, pledge or otherwise transfer any of your rights or interests in this Contract or any Equipment without our prior written consent. Any assignment without our consent will be void. We may assign this Contract or our interest in the Equipment at any time without notice to you and without your consent. We may provide information about you to any prospective assignee or participant. You agree not to assert against our assignee any claims, offsets or defenses which you may have against us.

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

| DOC4004 | 2/9/2009 | Settlement Nbr: 10745778 | Equipment Type: Construction & Forestry Commercial Application ID: 10745778   Version Number: 8 | Page 3 of 5 |

Revision Date: August, 2008

**12. Representations and Warranties.** You represent, warrant and covenant to us so long as this Contract is in effect, that: (a) you will not change your name without giving us at least 30 days' prior written notice; (b) each document you sign and deliver to us is duly authorized, executed and delivered by you, and is your valid, legal and binding agreement, enforceable in accordance with its terms; (c) the execution, delivery and performance by you of this Contract does not (and will not) violate any applicable law or breach any order of court or other governmental agency, or of any undertaking you are a party to or by which you or any of your properties are bound; (d) you will comply with all applicable laws, ordinances and regulations; (e) upon execution of this Contract, we shall have good and marketable title to any trade-in equipment free and clear of all liens and encumbrances whatsoever, (f) all information you have given to us is true, accurate and complete; (g) since the date of the most recent financial information given to us, no material adverse change in your business, assets, or prospects has occurred; (h) you will promptly deliver to us such financial statements, reports and other information as we may request; (i) the Equipment was selected by you; (j) the Equipment (including all manufacturer manuals and instructions) has been delivered to, and examined by, you; (k) the safe operation and the proper servicing of the Equipment were explained to you; (l) you received the written warranty applicable to the Equipment and understand that your rights under the written warranty may be limited; (m) the Equipment is unconditionally and irrevocably accepted by you as being suitable for its intended use; (n) the Equipment is in good condition and repair (operating and otherwise); (o) the Equipment shall be used only for the purpose indicated herein, will remain in your possession and will not be sold, rented or leased; and (p) you will pay all taxes assessed on the Equipment.

Unless you are an individual, you also represent, warrant and covenant to us that: (a) you are and will remain duly organized, validly existing and in good standing under the laws of your jurisdiction of organization; (b) you are qualified to do business under the laws of all other jurisdictions where qualification is required or advisable; (c) you will not change your jurisdiction of organization or organization type without at least 30 days' prior written notice to us; and (d) the execution, delivery and performance by you of this Contract will not breach any provision of your organizational documents.

If you are an individual, you agree not to move your residence to a different county or state without at least 30 days' prior written notice to us.

**13. Governing Law; Jurisdiction; Venue.** THIS CONTRACT WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF THE SELLER'S PLACE OF BUSINESS, WHERE THIS CONTRACT IS ACCEPTED AND ENTERED INTO, except for its conflict of laws provisions. You irrevocably submit to the non-exclusive jurisdiction and venue of federal and state courts located in Des Moines, Iowa and will not claim it is an inconvenient forum for legal action. YOU AND WE IRREVOCABLY WAIVE ANY RIGHT YOU AND WE MAY HAVE TO A JURY TRIAL.

**14. Miscellaneous.** WE HAVE NOT MADE, AND DO NOT MAKE, ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE EQUIPMENT'S MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY, OR OTHERWISE. WE ARE NOT LIABLE FOR CONSEQUENTIAL OR SPECIAL DAMAGES. You agree not to withhold any amount you owe us if you believe you have a claim against us, or any manufacturer(s) of the Equipment, but to pursue that claim independently. Any claim you have against us must be made within two years after the event that caused it. All notices must be in writing and will be deemed given 5 days after mailing to the intended recipient at its address indicated above, unless changed by a notice given in accordance with this Section. This Contract supersedes and replaces all prior understandings and communications (oral or written) concerning the subject matter thereof. No part of this Contract can be amended, waived or terminated except by a writing signed by both you and us. This Contract may be signed in separate counterparts that, together, will constitute one document. A paper or facsimile transmission copy of your signature or an electronic signature shall constitute an original signature under applicable law for all purposes. If a court finds any part of this Contract to be invalid or unenforceable, the remainder of this Contract will remain in effect. You permit us to monitor and record telephone conversations between you and us. All of our rights shall remain in effect after the expiration or termination of this Contract.

You and we intend to comply with all applicable laws. In no event will we charge or collect any amounts in excess of those allowed by applicable law. In the event any amount in excess of that allowed by law is charged or recovered, any such charge will be deemed limited by the amount legally allowed and any amount received by us in excess of that legally allowed will be applied by us to the payment of amounts legally allowed under this Contract, or refunded to you.

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

| **DOC4004** | 2/9/2009 | Settlement No: 10745776 | Equipment Type: Construction & Forestry Commercial<br>Application ID: 10745776   Version Number: 6 | Page 4 of 5 |

Revision Date: **August, 2008**

**THE TERMS OF THIS CONTRACT SHOULD BE READ CAREFULLY BEFORE SIGNING BECAUSE ONLY THESE WRITTEN TERMS ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES MAY BE LEGALLY ENFORCED. BY SIGNING THIS CONTRACT, YOU AGREE TO THE TERMS ON ALL PAGES. THIS CONTRACT IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN YOU AND US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.**

DATE AGREEMENT SIGNED: _2/10/09_

CLAYTON RAILROAD CONSTRUCTION, LLC

LESLIE EQUIPMENT CO.
(SELLER'S NAME)

By: _____ R McAdams Sr _2/10/09_
JAMES R MCADAMS SR, Chief (DATE SIGNED)
Executive Officer

By: _____
(SELLER'S SIGNATURE)

_____ L McAdams Sr _2/10/09_
JAMES R MCADAMS SR, Individually (DATE SIGNED)

**ASSIGNMENT.** For value received, Seller hereby sells, assigns and otherwise transfers to John Deere Construction & Forestry Company ("Deere"), its successors and assigns, under the terms and conditions of the applicable Finance Agreement now in effect between Seller and Deere, all of Seller's right, title and interest in and to (1) this Retail Installment Contact, (2) all rights and remedies hereunder, (3) all Installment Payments and other amounts due and to become due hereunder, (4) all insurance proceeds and other proceeds, and (5) all Equipment subject hereto. This instrument is not an assignment of any Seller's obligations to the buyer of the Equipment. Seller authorizes Deere, its successors and assigns, to do every act or thing necessary to collect and discharge the same.

Date: _2/10/09_     Dealer: _Leslie Equipment Co_     Signed By: _____

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

| | | | |
|---|---|---|---|
| **DOC4004** | 2/9/2009  Settlement Nbr: 10745776  Equipment Type: Construction & Forestry Commercial  Application ID: 10745776  Version Number: 5 | | Page 5 of 5 |
| Revision Date: **August, 2008** | | | |

# RECEIVED



## JOHN DEERE CREDIT

SEP 3 0 2009

JOHN DEERE CONSTRUCTION
& FORESTRY CO.

Application ID: 10826301
Version Number: 9

**FIXED RATE CONTRACT**
C&F Business or Commercial Use

## LOAN CONTRACT - SECURITY AGREEMENT

Contract Begin Date : 09/26/2009

| SELLER'S NAME AND ADDRESS | DEALER NUMBER | PHONE NUMBER |
|---|---|---|
| LESLIE EQUIPMENT CO.<br>5775 US RTE 23 S<br>CHILLICOTHE, OH 45601 | 17-9514 | 740-663-5300 |

| BORROWER'S NAME AND PHYSICAL ADDRESS | BORROWER'S TAX ID NUMBER | BORROWER'S PHONE NO. | TYPE OF BUSINESS |
|---|---|---|---|
| CLAYTON RAILROAD CONSTRUCTION, LLC<br>500 LANE RD<br>WEST UNION, OH 45693-9440 | **-***3016 | 937-549-2952 | Limited Liability Company |
| BORROWER RESIDES IN (County/State)<br>ADAMS, OH | | BORROWER AGREES TO KEEP GOODS IN (County/State)<br>ADAMS, OH | |
| NAME AND TITLE OF SIGNING OFFICER<br>JAMES R MCADAMS - President | | | |

| CO-BORROWER'S NAME AND PHYSICAL ADDRESS | CO-BORROWER'S SOC. SEC. NUMBER | CO-BORROWER'S PHONE NO. | TYPE OF BUSINESS |
|---|---|---|---|
| JAMES R MCADAMS SR<br>500 LANE RD<br>WEST UNION, OH 45693-9440 | ***-**-1941 | 937-549-2952 | |

**1. Parties.** This Loan Contract-Security Agreement ("Contract") is entered into between John Deere Construction & Forestry Company ("we", "us" or "our") and the borrower(s) indicated above ("you" or "your"). If more than one borrower is indicated, each borrower shall be jointly and severally liable for all of the obligations under this Contract.

**2. Loan.** You hereby apply for a loan in the Amount Financed shown below, which, if accepted by us, the loan will be (a) subject to the terms and conditions set forth in this Contract, and (b) used to finance the balance due on the purchase from the Seller of the equipment and/or services described below (the "Equipment"). All attachments and accessories itemized on this Contract and all replacements, parts and repairs to the Equipment shall form part of the Equipment.

**3. Installment Payments.** In addition to any down payment, you agree to pay us the Amount Financed, together with finance charges from the Date Finance Charge Begins, at the Annual Percentage Rate, by remitting each of the Installment Payments on or before the due dates indicated. Any amounts applied to this Contract will be applied first to any late charges, any charges for dishonored checks and any other fees or costs due under this agreement, then to finance charges, computed on the date the payment is received and the remainder to the Amount Financed. You agree that your payments will be applied as of the date of receipt if received by 11:00 a.m. Central Time Monday through Friday (otherwise next business day); but if payment is not accompanied by the payment stub, is not in the envelope we provided, includes other items such as other checks, staples or paper clips, or is not received at that location, credit may be delayed up to five days. This Contract is not accepted by us until we sign it, even if you have made a payment to us. You agree to remit to us the Installment Payments and all other amounts when due and payable each Billing Period, even if we do not send you a bill or an invoice. **YOUR PAYMENT OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL, AND ARE NOT SUBJECT TO CANCELLATION, REDUCTION OR SETOFF FOR ANY REASON WHATSOEVER.** For any scheduled payment which is not received by its due date, you agree to pay us interest on the unpaid amount at a rate of 20% per annum on that scheduled payment, but in no event more than the maximum lawful rate, from the due date until paid. Restrictive endorsements on checks you send to us will not change or reduce your obligations to us. We will not lose any rights if we accept late or partial payments or delay enforcing our rights under this Contract. If a check or electronic payment authorization you give us is dishonored upon first presentment, you agree to pay us a fee of $25.00, or the maximum amount permitted by law, whichever is less. Installment Payments and other payments, including proceeds of insurance or any sale of the Equipment, may be applied, at our discretion and in spite of any instructions you may provide, to any obligation you may have to us or any of our affiliates. If the total of all payments made by you exceeds the total of all amounts due under this Contract by less than $25.00, we may retain such excess.

| EQUIPMENT PURCHASED |
|---|

### THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE

| DOC8015 | 9/28/2009 | Settlement Nbr: 10826301<br>Application ID: 10826301 | Equipment Type: Construction & Forestry Commercial<br>Version Number: 9 | Customer Initials | Page 1 of 5 |
|---|---|---|---|---|---|

Revision Date: June 2009



## (EX. K - 3159)

| QTY. | NEW USED | MFR. | MODEL | EQUIPMENT DESCRIPTION | AMOUNT |
|------|----------|------|-------|----------------------|--------|
| 1 | USED | JD | 550J | 550J LT Crawler Dozer | $101,000.00 |

PRODUCT ID NO.  T0550JX141082

| QTY. | NEW USED | MFR. | MODEL | EQUIPMENT DESCRIPTION | AMOUNT |
|------|----------|------|-------|----------------------|--------|
| 1 | USED | JD | 120C | 120C EXCAVATOR | $95,000.00 |

PRODUCT ID NO.  FF120CX036572

**TRADE-IN and CASH DOWN PAYMENT**

| QTY. | MFR. | MODEL | DESCRIPTION OF TRADE-IN (From Purchase Order) | PRODUCT ID NO. | AMOUNT |
|------|------|-------|----------------------------------------------|----------------|--------|
| | | | TOTAL TRADE-IN: | | $0.00 |
| | | | CASH DOWN PAYMENT: | | $0.00 |
| | | | RENTAL APPLIED: | | $28,000.00 |
| | | | TOTAL TRADE-IN PLUS CASH DOWN: | | $28,000.00 |

**INSTALLMENT PAYMENTS**

DATE FINANCE CHARGE BEGINS:  September 26, 2009

The first Installment Payment Due Date is October 26, 2009 and each successive Installment Payment is due on the same day of the Month thereafter, (the "Billing Period"), unless otherwise provided below;

| NUMBER OF PAYMENTS | AMOUNT OF EACH PAYMENT | DUE DATE |
|--------------------|------------------------|----------|
| 48 | $4,126.30 | October 26, 2009 |

The amounts shown below as Finance Charge, Total of Payments and Total Sale Price are estimates based upon the assumption that payments will be made on the scheduled payment due date according to the installment schedule. The actual Finance Charge, Total of Payments, and Total Sale Price may vary depending upon the early or late payment of scheduled installments.

**ITEMIZATION OF AMOUNT FINANCED**

| | | |
|---|---|---|
| SALES TAX  (Paid to Govt. Agencies) | | $0.00 |
| CASH PRICE  (Including Tax) | 1 | $196,000.00 |
| TOTAL DOWN PAYMENT  (Sum of Trade-In & Cash Down Payment) | 2 | $28,000.00 |
| UNPAID BALANCE OF CASH PRICE (The amount credited to your account with us) | 3 | $168,000.00 |
| INSURANCE  (Physical Damage Paid to Insurance Companies) | 4 | $0.00 |
| ORIGINATION FEES | 4A | $300.00 |
| OFFICIAL FEES  (Paid to Public Officials) | 5 | $12.00 |
| AMOUNT FINANCED  (Lines 3, 4, 4A, 5 & 5A (if Applicable) ) The amount of credit provided to you. | 6 | $168,312.00 |
| FINANCE CHARGE (Based on Line 6) The dollar amount the credit will cost you. | 7 | $29,750.40 |
| TOTAL OF PAYMENTS (Lines 6 & 7) The amount you will have paid after you have made all payments as scheduled. | 8 | $198,062.40 |
| ANNUAL PERCENTAGE RATE (The cost of your credit as a yearly rate) | | 8.22% |
| TOTAL SALE PRICE (Lines 1, 4, 4A, 5, 5A (if Applicable), & 7) The total price of your purchase on credit, including the Total Down Payment of $28,000.00. | | $226,062.40 |

**4. Prepayment.**  You may prepay your obligations under this Contract in full at any time by paying the unpaid principal balance and any earned and unpaid finance charges.  The unpaid principal balance includes any origination fee.

**5. Security Interest; Missing Information.**  You grant us a security interest in the Equipment (and all proceeds thereof) to secure all of your obligations under this Contract and any other obligations which you may have to us or any of our affiliates or assignees, now or in the future and you agree that any security interest you previously granted to us or our affiliates shall also secure your obligations under this Contract.  Upon receipt of all amounts due and to become due under this Contract, we will release our security interest in the Equipment provided no event of default has occurred and is continuing.  You agree to keep the Equipment free and clear of all liens and encumbrances, except those in our favor, and promptly notify us if a lien or encumbrance is placed or threatened against the Equipment.  You irrevocably authorize us, at any time, to (a) insert or correct information on this Contract, including your correct legal name, serial numbers and Equipment descriptions; (b) submit notices and proofs of loss for any required insurance; (c) endorse your name on remittances for insurance and Equipment sale or lease proceeds; and (d) file a financing statement(s) which describes either the Equipment or all equipment currently or in the future financed by us.  You irrevocably authorize  anyone in possession of information regarding the location, maintenance, operation and condition of  the Equipment to provide all of that information to us upon our request.

**6. Equipment Maintenance, Operation and Use.**  You agree to (a) USE THE EQUIPMENT ONLY FOR AGRICULTURAL, BUSINESS OR COMMERCIAL PURPOSES AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES; (b) operate and

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

| | 9/28/2009 | Settlement No:  10826301 | Equipment Type:  Construction & Forestry  Commercial | |
|---|---|---|---|---|
| **DOC8015** | | Application ID:  10826301 | Version Number: 9    Customer Initials: | Page 2 of 5 |

Revision Date: June 2009



maintain the Equipment in accordance with all (1) applicable laws, ordinances and regulations, (2) manuals and other instructions issued by the manufacturer(s) and supplier(s), and (3) insurance policy terms and requirements; (c) perform (at your expense) all maintenance and repairs necessary to keep the Equipment in as good a condition as when delivered to you, reasonable wear excepted; (d) allow us and our agent(s) to inspect the Equipment and all of your records related to its use, maintenance and repair, at any reasonable time; and (e) not permit the Equipment to be used by, or to be in the possession of, anyone other than you or your employees.

**7. Insurance.** You agree, at your cost, to maintain all-risk insurance coverage with respect to the Equipment for no less than its full replacement value, naming us (and our successor and assigns) as sole loss payee. You may choose who provides that insurance, but that insurance must be with companies and policies acceptable to us. Your obligation to insure the Equipment continues until all your other obligations under this Contract are satisfied. Each insurance policy must provide that (1) our interest in the policy will not be invalidated by any act, omission, breach or neglect of anyone other than us; (2) the insurer will give us at least 30 days' prior written notice before any cancellation of, non-renewal of, or material change to, the policy; and (3) such coverage shall be primary over any insurance purchased by us (or our affiliates).

Unless you provide us with evidence of the required insurance coverage's, we may, but are not required to, purchase insurance, at your expense, to protect our interests in the Equipment and charge you an insurance fee on which we may make a profit. This insurance may not (1) protect your interests; or (2) pay any claim that you make or any claim that is made against you in connection with the Equipment. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained the insurance required by this Contract. **THE COST OF THE INSURANCE MAY BE MORE THAN THE COST OF THE INSURANCE YOU MAY BE ABLE TO OBTAIN ON YOUR OWN. THE COVERAGES OF THAT INSURANCE MAY BE DIFFERENT FROM THE COVERAGES OF INSURANCE YOU MAY BE ABLE TO OBTAIN ON YOUR OWN.** You agree to pay us the cost of any insurance plus a $150 insurance placement and service fee. You will immediately pay that amount to us or we may, at our sole discretion, add that cost to the Account Balance and increase the required Installment Payments accordingly.

If a default occurs, you authorize us to cancel the insurance on the Equipment and apply any returned premiums to the Account Balance.

If the cost of the insurance was included in the Amount Financed, that insurance will terminate (a) if your debt to us is discharged, (b) if we release our security interest in the Equipment, (c) if a default occurs and we cancel the insurance, (d) if the Equipment is repossessed, (e) if the Floater Policy under which you purchased that insurance terminates, or (f) on the due date of the final scheduled Installment Payment.

**8. Loss or Damage.** Until all of your obligations under this Contract are satisfied, you are responsible for all risk of loss and damage, loss, theft, destruction or seizure of the Equipment (an "Event of Loss"). You must promptly notify us of any Event of Loss. If the Equipment can be repaired or replaced, you agree to promptly repair or replace the Equipment, at your cost, and the terms of this Contract will continue to apply. If the Equipment cannot be repaired or replaced, you agree to immediately pay us the Account Balance. Upon receipt of the Account Balance, we will release our security interest in the Equipment. All insurance proceeds must be paid directly to us, and we may apply any excess insurance proceeds to any other amounts you owe us or any of our affiliates.

**9. Default.** We may determine you to be in default if: (a) you fail to remit to us any Installment Payment or other payment when due; (b) you breach any other provision of this Contract; (c) you remove any Equipment from the United States; (d) a petition is filed by or against you or any guarantor under any bankruptcy, attachment, execution or insolvency law or you or any such guarantor make an assignment for the benefit of creditors; (e) a default occurs under any other agreement between you (or any of your affiliates) and us (or any of our affiliates); (f) you or any guarantor merges with or consolidates into another entity, sells substantially all its assets, dissolves or terminates its existence, or (if an individual) dies or becomes incompetent; (g) you fail to maintain the insurance required by this Contract; or (h) if for any reason, we deem the debt or the Equipment to be insecure. Time is of the essence under this Contract.

**10. Remedies.** If we determine that you are in default, we may do one or more of the following: (a) recover from you, AS LIQUIDATED DAMAGES FOR LOSS OF BARGAIN AND NOT AS A PENALTY, the Account Balance as of the date of such default, without presentment or demand; (b) declare any other agreements between you and us in default; (c) terminate any of your rights (but none of your obligations) under this Contract and any other agreement between you and us (or any of our affiliates); (d) require you to deliver the Equipment to us in the manner outlined below, or take possession of the Equipment; (e) lease or sell the Equipment or any portion thereof at a public or private sale; (f) apply the net proceeds we receive from any sale, lease or other disposition of the

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

| | 9/28/2009 | Settlement Nbr: 10826301 | Equipment Type: Construction & Forestry Commercial | | |
|---|---|---|---|---|---|
| DOC8015 | | Application ID: 10826301 | Version Number: 9 | Customer Initials: | Page 3 of 5 |
| Revision Date: June 2009 | | | | | |



Equipment (after deducting all of our costs and expenses) to your obligations under this Contract, with you remaining liable for any deficiency; (g) require you to reimburse and indemnify us for all losses, claims, damages and expenses of any kind or nature whatsoever incurred in connection with the Equipment or this Contract and/or the enforcement of our remedies hereunder including, without limitation, repossession, repair and collection costs, damage awards, attorneys' fees and court and bankruptcy fees and costs; (h) exercise any other remedy available at law or in equity; and (i) take on your behalf (at your expense) any action required by this Contract which you fail to take. These remedies are cumulative, are in addition to any other remedies provided for by law, and may be exercised concurrently or separately. Any failure or delay by us to exercise any right shall not operate as a waiver of any other right or future right. In no event will the costs and expenses referred to in this section be more than those allowed by law.

If we determine that you are in default, all Equipment must be delivered to the place designated by us, at your expense and in satisfactory condition, along with all use, maintenance and repair records. Equipment is in satisfactory condition if it is in as good a condition as when the Equipment was delivered to you, reasonable wear excepted, as determined by us in our sole discretion.

**11. Assignment.** You will not assign, pledge or otherwise transfer any of your rights or interests in this Contract or any Equipment without our prior written consent. Any assignment without our consent will be void. We may assign this Contract or our interest in the Equipment at any time without notice to you and without your consent. We may provide information about you to any prospective assignee or participant. You agree not to assert against our assignee any claims, offsets or defenses which you may have against us.

**12. Representations and Warranties.** You represent, warrant and covenant to us so long as this Contract is in effect, that: (a) you will not change your name without giving us at least 30 days' prior written notice; (b) each document you sign and deliver to us is duly authorized, executed and delivered by you, and is your valid, legal and binding agreement, enforceable in accordance with its terms; (c) the execution, delivery and performance by you of this Contract does not (and will not) violate any applicable law or breach any order of court or other governmental agency, or of any undertaking you are a party to or by which you or any of your properties are bound; (d) you will comply with all applicable laws, ordinances and regulations; (e) upon execution of this Contract, the Seller shall have good and marketable title to any trade-in equipment free and clear of all liens and encumbrances whatsoever; (f) all information you have given to us is true, accurate and complete; (g) since the date of the most recent financial information given to us, no material adverse change in your business, assets, or prospects has occurred; (h) you will promptly deliver to us such financial statements, reports and other information as we may request; (i) the Equipment was selected by you; (j) the Equipment (including all manufacturer manuals and instructions) has been delivered to, and examined by, you; (k) the safe operation and the proper servicing of the Equipment were explained to you; (l) you received the written warranty applicable to the Equipment and understand that your rights under the written warranty may be limited; (m) the Equipment is unconditionally and irrevocably accepted by you as being suitable for its intended use; (n) the Equipment is in good condition and repair (operating and otherwise); (o) the Equipment shall be used only for the purpose indicated herein, will remain in your possession and will not be sold, rented or leased; and (p) you will pay all taxes assessed on the Equipment.

Unless you are an individual, you also represent, warrant and covenant to us that: (a) you are and will remain duly organized, validly existing and in good standing under the laws of your jurisdiction of organization; (b) you are qualified to do business under the laws of all other jurisdictions where qualification is required or advisable; (c) you will not change your jurisdiction of organization or organization type without at least 30 days' prior written notice to us; and (d) the execution, delivery and performance by you of this Contract will not breach any provision of your organizational documents.

If you are an individual, you agree not to move your residence to a different county or state without at least 30 days' prior written notice to us.

**13. Governing Law; Jurisdiction; Venue.** THIS CONTRACT WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF IOWA, WHERE THIS CONTRACT IS ACCEPTED AND ENTERED INTO, except for its conflict of laws provisions. You irrevocably submit to the non-exclusive jurisdiction and venue of federal and state courts located in Des Moines, Iowa and will not claim it is an inconvenient forum for legal action. YOU AND WE IRREVOCABLY WAIVE ANY RIGHT YOU AND WE MAY HAVE TO A JURY TRIAL. However, you acknowledge that any Iowa state law compulsory mediation requirements will apply to this agreement or the Equipment only if you are a resident of the State of Iowa.

**14. Miscellaneous.** WE HAVE NOT MADE, AND DO NOT MAKE, ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE EQUIPMENT'S MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY, OR OTHERWISE. WE ARE NOT LIABLE FOR CONSEQUENTIAL OR SPECIAL DAMAGES. You acknowledge that the Seller of the Equipment is not an agent of ours, or authorized to act for or bind us. You agree not to withhold any amount you owe us if you believe

THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE

| | 9/28/2009 | Settlement Nbr: 10826301 | Equipment Type: Construction & Forestry Commercial | | |
|---|---|---|---|---|---|
| DOC8015 | | Application ID: 10826301 | Version Number: 9 | Customer Initials: | Page 4 of 5 |

Revision Date: June 2009



you have a claim against us, the Seller or any manufacturer(s) of the Equipment, but to pursue that claim independently. Any claim you have against us must be made within two years after the event that caused it. All notices must be in writing and will be deemed given 5 days after mailing to the intended recipient at its address indicated above, unless changed by a notice given in accordance with this Section. This Contract supersedes and replaces all prior understandings and communications (oral or written) concerning the subject matter thereof. No part of this Contract can be amended, waived or terminated except by a writing signed by both you and us. This Contract may be signed in separate counterparts that, together, will constitute one document. A paper or facsimile transmission copy of your signature or an electronic signature shall constitute an original signature under applicable law for all purposes. If a court finds any part of this Contract to be invalid or unenforceable, the remainder of this Contract will remain in effect. You permit us to monitor and record telephone conversations between you and us. You agree that by providing us any telephone number, including a mobile phone number, we and any debt collector we retain can contact you using that number, including calls using an automatic dialing and announcing device and prerecorded calls. All of our rights shall remain in effect after the expiration or termination of this Contract.

You and we intend to comply with all applicable laws. In no event will we charge or collect any amounts in excess of those allowed by applicable law. In the event any amount in excess of that allowed by law is charged or recovered, any such charge will be deemed limited by the amount legally allowed and any amount received by us in excess of that legally allowed will be applied by us to the payment of amounts legally allowed under this Contract, or refunded to you.

**THE TERMS OF THIS CONTRACT SHOULD BE READ CAREFULLY BEFORE SIGNING BECAUSE ONLY THESE WRITTEN TERMS ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES MAY BE LEGALLY ENFORCED. BY SIGNING THIS CONTRACT, YOU AGREE TO THE TERMS ON ALL PAGES. THIS CONTRACT IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN YOU AND US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.**

I agree that I have received a completely filled in copy of this Agreement.

CLAYTON RAILROAD CONSTRUCTION, LLC

DATE AGREEMENT SIGNED: 9/28/09

Accepted By: **John Deere Construction & Forestry Company (Lender)**
6400 NW 86th Street, Johnston, IA 50131-6600

By: _____ JAMES R MCADAMS, President (Date Signed) 9/28/09

X _____ JAMES R MCADAMS SR, Individually (Date Signed)

By: _____ (AUTHORIZED SIGNATURE)

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

| DOC8015 | 9/28/2009 | Settlement Nbr: 10826301 | Equipment Type: Construction & Forestry Commercial | Page 5 of 5 |
|---|---|---|---|---|
| Revision Date: June 2009 | | Application ID: 10826301 | Version Number: 9    Customer Initials: | |





# RECEIVED

**MAY 2 0 2010**

### JOHN DEERE CONSTRUCTION & FORESTRY CO

Application ID· 10926709
Version Number. 4

FIXED RATE CONTRACT
C&F Business or Commercial Use

## LOAN CONTRACT - SECURITY AGREEMENT

Contract Begin Date  05/18/2010

| SELLER'S NAME AND ADDRESS | DEALER NUMBER | PHONE NUMBER |
|---|---|---|
| LESLIE EQUIPMENT CO. 6775 US RTE 23 S CHILLICOTHE, OH 45601 | 17-0614 | 740-663-5300 |

| BORROWER'S NAME AND PHYSICAL ADDRESS | BORROWER'S SOC SEC NUMBER ***-**-1541 | BORROWER'S PHONE NO 937-549-2952 | TYPE OF BUSINESS |
|---|---|---|---|
| JAMES R MCADAMS SR 500 LANE RD WEST UNION, OH 45693-9440 | | | |
| BORROWER RESIDES IN (County/State) ADAMS, OH | BORROWER AGREES TO KEEP GOODS IN (County/State) ADAMS, OH | | |

**1. Parties.** This Loan Contract-Security Agreement ("Contract") is entered into between John Deere Construction & Forestry Company ("we", "us" or "our") and the borrower(s) indicated above ("you" or "your"). If more than one borrower is indicated, each borrower shall be jointly and severally liable for all of the obligations under this Contract

**2. Loan.** You hereby apply for a loan in the Amount Financed shown below, which, if accepted by us, the loan will be (a) subject to the terms and conditions set forth in this Contract, and (b) used to finance the balance due on the purchase from the Seller of the equipment and/or services described below (the "Equipment") All attachments and accessories itemized on this Contract and all replacements, parts and repairs to the Equipment shall form part of the Equipment.

**3. Installment Payments.** In addition to any down payment, you agree to pay us the Amount Financed, together with finance charges from the Date Finance Charge Begins, at the Annual Percentage Rate, by remitting each of the Installment Payments on or before the due dates indicated. Any amounts applied to this Contract will be applied first to any late charges, any charges for dishonored checks and any other fees or costs due under this agreement, then to finance charges, computed on the date the payment is received and the remainder to the Amount Financed You agree that your payments will be applied as of the date of receipt if received by 11·00 a.m. Central Time Monday through Friday (otherwise next business day); but if payment is not accompanied by the payment stub, is not in the envelope we provided, includes other items such as other checks, staples or paper clips, or is not received at that location, credit may be delayed up to five days This Contract is not accepted by us until we sign it, even if you have made a payment to us You agree to remit to us the Installment Payments and all other amounts when due and payable each Billing Period, even if we do not send you a bill or an invoice. **YOUR PAYMENT OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL, AND ARE NOT SUBJECT TO CANCELLATION, REDUCTION OR SETOFF FOR ANY REASON WHATSOEVER.** For any scheduled payment which is not received by its due date, you agree to pay us interest on the unpaid amount at a rate of 20% per annum on that scheduled payment, but in no event more than the maximum lawful rate, from the due date until paid Restrictive endorsements on checks you send to us will not change or reduce your obligations to us. We will not lose any rights if we accept late or partial payments or delay enforcing our rights under this Contract. If a check or electronic payment authorization you give us is dishonored upon first presentment, you agree to pay us a fee of $25.00, or the maximum amount permitted by law, whichever is less Installment Payments and other payments, including proceeds of insurance or any sale of the Equipment, may be applied, at our discretion and in spite of any instructions you may provide, to any obligation you may have to us or any of our affiliates. If the total of all payments made by you exceeds the total of all amounts due under this Contract by less than $25 00, we may retain such excess

| EQUIPMENT PURCHASED | | | | | |
|---|---|---|---|---|---|
| QTY | NEW USED | MFR | MODEL | EQUIPMENT DESCRIPTION | AMOUNT |
| 1 | USED | JD | 350 | 350DLC Excavator | $220,500.00 |
| PRODUCT ID NO   FF350DX906628 | | | | | |
| 1 | USED | JD | 624K | 624KXDW 4WD Loader | $180,000.00 |

### THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE

| | 5/18/2010 | Settlement Nbr 10926709 | Equipment Type Construction & Forestry Commercial | | |
|---|---|---|---|---|---|
| DOC8015 | | Application ID  10926709 | Version Number  4 | Customer Initials  JRM | Page 1 of 5 |

Revision Date, June 2009



## *(EX. M - 8806)*

| PRODUCT ID NO | DW624KZ624527 | | | | |
|---|---|---|---|---|---|
| 1 | USED | JD | 655 | 655C CRWLR LOADER | $97,000.00 |

| PRODUCT ID NO | LU655CX008642 | | | | |
|---|---|---|---|---|---|
| 1 | USED | SKT | 8042 | Skytrak 8042 Forklift | $80,000.00 |

| PRODUCT ID NO | 160035657 | | | | |
|---|---|---|---|---|---|
| 1 | USED | JD | 450J | 450J LT Crawler Dozer | $72,500.00 |

| PRODUCT ID NO | T0450JX137020 | | | | |
|---|---|---|---|---|---|
| 1 | USED | JD | 50D | 50DXFF Compact Excavator | $60,318.50 |

| PRODUCT ID NO | FF050DX270657 | | | | |
|---|---|---|---|---|---|

### TRADE-IN and CASH DOWN PAYMENT

| QTY | MFR | MODEL | DESCRIPTION OF TRADE-IN (From Purchase Order) | PRODUCT ID NO | AMOUNT |
|---|---|---|---|---|---|
| | | | | TOTAL TRADE-IN | $0.00 |
| | | | | CASH DOWN PAYMENT | $0.00 |
| | | | | RENTAL APPLIED· | $193,000.00 |
| | | | | TOTAL TRADE-IN PLUS CASH DOWN | $193,000.00 |

### INSTALLMENT PAYMENTS

DATE FINANCE CHARGE BEGINS· May 18, 2010

The first Installment Payment Due Date is June 18 2010 and each successive Installment Payment is due on the same day of the Month thereafter, (the "Billing Period"), unless otherwise provided below:

| NUMBER OF PAYMENTS | AMOUNT OF EACH PAYMENT | DUE DATE |
|---|---|---|
| 48 | $12,616.39 | June 18, 2010 |

The amounts shown below as Finance Charge, Total of Payments and Total Sale Price are estimates based upon the assumption that payments will be made on the scheduled payment due date according to the installment schedule. The actual Finance Charge, Total of Payments, and Total Sale Price may vary depending upon the early or late payment of scheduled installments.

### ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| SALES TAX (Paid to Govt. Agencies) | | $0.00 |
| CASH PRICE (Including Tax) | 1 | $719,318.50 |
| TOTAL DOWN PAYMENT (Sum of Trade-in & Cash Down Payment) | 2 | $193,000.00 |
| UNPAID BALANCE OF CASH PRICE (The amount credited to your account with us) | 3 | $517,318.50 |
| INSURANCE (Physical Damage Paid to Insurance Companies) | 4 | $0.00 |
| ORIGINATION FEES | 4A | $300.00 |
| OFFICIAL FEES (Paid to Public Officials) | 5 | $12.00 |
| AMOUNT FINANCED (Lines 3, 4, 4A, 5 & 5A (if Applicable) ) The amount of credit provided to you | 6 | $517,630.50 |
| FINANCE CHARGE (Based on Line 6) The dollar amount the credit will cost you | 7 | $87,956.22 |
| TOTAL OF PAYMENTS (Lines 6 & 7) The amount you will have paid after you have made all payments as scheduled. | 8 | $605,586.72 |
| ANNUAL PERCENTAGE RATE (The cost of your credit as a yearly rate) | | 7.90% |
| TOTAL SALE PRICE (Lines 1 4 4A, 5, 5A (if Applicable) & 7) The total price of your purchase on credit, including the Total Down Payment of $193 000 00 | | $798,586.72 |

**4. Prepayment.** You may prepay your obligations under this Contract in full at any time by paying the unpaid principal balance and any earned and unpaid finance charges. The unpaid principal balance includes any origination fee.

**5. Security Interest; Missing Information.** You grant us a security interest in the Equipment (and all proceeds thereof) to secure all of your obligations under this Contract and any other obligations which you may have to us or any of our affiliates or assignees, now or in the future and you agree that any security interest you previously granted to us or our affiliates shall also secure your obligations under this Contract. Upon receipt of all amounts due and to become due under this Contract, we will release our security interest in the Equipment provided no event of default has occurred and is continuing. You agree to keep the Equipment free and clear of all liens and encumbrances, except those in our favor, and promptly notify us if a lien or encumbrance is placed or threatened against the Equipment. You irrevocably authorize us, at any time, to (a) insert or correct information on this Contract, including your correct legal name, serial numbers and Equipment descriptions; (b) submit notices and proofs of loss for any required insurance; (c) endorse your name on remittances for insurance and Equipment sale or lease proceeds, and (d) file a financing statement(s) which describes either

### THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE



| DOC8015 | 5/18/2010 | Settlement Nbr 10926709 Application ID 10926709 | Equipment Type Construction & Forestry Commercial Version Number 4    Customer Initials. | Page 2 of 5 |
|---|---|---|---|---|

Revision Date: June 2009

the Equipment or all equipment currently or in the future financed by us You irrevocably authorize anyone in possession of information regarding the location, maintenance, operation and condition of the Equipment to provide all of that information to us upon our request.

**6. Equipment Maintenance, Operation and Use. You agree to (a) USE THE EQUIPMENT ONLY FOR AGRICULTURAL, BUSINESS OR COMMERCIAL PURPOSES AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES;** (b) operate and maintain the Equipment in accordance with all (1) applicable laws, ordinances and regulations, (2) manuals and other instructions issued by the manufacturer(s) and supplier(s), and (3) insurance policy terms and requirements, (c) perform (at your expense) all maintenance and repairs necessary to keep the Equipment in as good a condition as when delivered to you, reasonable wear excepted, (d) allow us and our agent(s) to inspect the Equipment and all of your records related to its use, maintenance and repair, at any reasonable time; and (e) not permit the Equipment to be used by, or to be in the possession of, anyone other than you or your employees

**7. Insurance.** You agree, at your cost, to maintain all-risk insurance coverage with respect to the Equipment for no less than its full replacement value, naming us (and our successor and assigns) as sole loss payee. You may choose who provides that insurance, but that insurance must be with companies and policies acceptable to us Your obligation to insure the Equipment continues until all your other obligations under this Contract are satisfied Each insurance policy must provide that (1) our interest in the policy will not be invalidated by any act, omission, breach or neglect of anyone other than us, (2) the insurer will give us at least 30 days' prior written notice before any cancellation of, non-renewal of, or material change to, the policy, and (3) such coverage shall be primary over any insurance purchased by us (or our affiliates).

Unless you provide us with evidence of the required insurance coverage's, we may, but are not required to, purchase insurance, at your expense, to protect our interests in the Equipment and charge you an insurance fee on which we may make a profit. This insurance may not (1) protect your interests, or (2) pay any claim that you make or any claim that is made against you in connection with the Equipment. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained the insurance required by this Contract THE COST OF THE INSURANCE MAY BE MORE THAN THE COST OF THE INSURANCE YOU MAY BE ABLE TO OBTAIN ON YOUR OWN. THE COVERAGES OF THAT INSURANCE MAY BE DIFFERENT FROM THE COVERAGES OF INSURANCE YOU MAY BE ABLE TO OBTAIN ON YOUR OWN. You agree to pay us the cost of any insurance plus a $150 insurance placement and service fee You will immediately pay that amount to us or we may, at our sole discretion, add that cost to the Account Balance and increase the required Installment Payments accordingly

If a default occurs, you authorize us to cancel the insurance on the Equipment and apply any returned premiums to the Account Balance.

If the cost of the insurance was included in the Amount Financed, that insurance will terminate (a) if your debt to us is discharged, (b) if we release our security interest in the Equipment, (c) if a default occurs and we cancel the insurance, (d) if the Equipment is repossessed, (e) if the Floater Policy under which you purchased that insurance terminates, or (f) on the due date of the final scheduled Installment Payment.

**8. Loss or Damage.** Until all of your obligations under this Contract are satisfied, you are responsible for all risk of loss and damage, loss, theft, destruction or seizure of the Equipment (an "Event of Loss"). You must promptly notify us of any Event of Loss If the Equipment can be repaired or replaced, you agree to promptly repair or replace the Equipment, at your cost, and the terms of this Contract will continue to apply. If the Equipment cannot be repaired or replaced, you agree to immediately pay us the Account Balance Upon receipt of the Account Balance, we will release our security interest in the Equipment. All insurance proceeds must be paid directly to us, and we may apply any excess insurance proceeds to any other amounts you owe us or any of our affiliates.

**9. Default.** We may determine you to be in default if (a) you fail to remit to us any Installment Payment or other payment when due, (b) you breach any other provision of this Contract, (c) you remove any Equipment from the United States; (d) a petition is filed by or against you or any guarantor under any bankruptcy, attachment, execution or insolvency law or you or any such guarantor make an assignment for the benefit of creditors; (e) a default occurs under any other agreement between you (or any of your affiliates) and us (or any of our affiliates); (f) you or any guarantor merges with or consolidates into another entity, sells substantially all its assets, dissolves or terminates its existence, or (if an individual) dies or becomes incompetent; (g) you fail to maintain the insurance required by this Contract, or (h) if for any reason, we deem the debt or the Equipment to be insecure Time is of the essence under this Contract

**10. Remedies.** If we determine that you are in default, we may do one or more of the following: (a) recover from you, AS

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

| | 5/18/2010 | Settlement Nbr 10925709 | Equipment Type Construction & Forestry Commercial | | |
|---|---|---|---|---|---|
| DOC8015 | | Application ID 10925709 | Version Number 4 | Customer Initials | Page 3 of 5 |

Revision Date, June 2009



LIQUIDATED DAMAGES FOR LOSS OF BARGAIN AND NOT AS A PENALTY, the Account Balance as of the date of such default, without presentment or demand, (b) declare any other agreements between you and us in default; (c) terminate any of your rights (but none of your obligations) under this Contract and any other agreement between you and us (or any of our affiliates), (d) require you to deliver the Equipment to us in the manner outlined below, or take possession of the Equipment; (e) lease or sell the Equipment or any portion thereof at a public or private sale, (f) apply the net proceeds we receive from any sale, lease or other disposition of the Equipment (after deducting all of our costs and expenses) to your obligations under this Contract, with you remaining liable for any deficiency, (g) require you to reimburse and indemnify us for all losses, claims, damages and expenses of any kind or nature whatsoever incurred in connection with the Equipment or this Contract and/or the enforcement of our remedies hereunder including, without limitation, repossession, repair and collection costs, damage awards, attorneys' fees and court and bankruptcy fees and costs; (h) exercise any other remedy available at law or in equity, and (i) take on your behalf (at your expense) any action required by this Contract which you fail to take. These remedies are cumulative, are in addition to any other remedies provided for by law, and may be exercised concurrently or separately Any failure or delay by us to exercise any right shall not operate as a waiver of any other right or future right. In no event will the costs and expenses referred to in this section be more than those allowed by law.

If we determine that you are in default, all Equipment must be delivered to the place designated by us, at your expense and in satisfactory condition, along with all use, maintenance and repair records. Equipment is in satisfactory condition if it is in as good a condition as when the Equipment was delivered to you, reasonable wear excepted, as determined by us in our sole discretion

**11. Assignment.** You will not assign, pledge or otherwise transfer any of your rights or interests in this Contract or any Equipment without our prior written consent Any assignment without our consent will be void We may assign this Contract or our interest in the Equipment at any time without notice to you and without your consent. We may provide information about you to any prospective assignee or participant You agree not to assert against our assignee any claims, offsets or defenses which you may have against us

**12. Representations and Warranties.** You represent, warrant and covenant to us so long as this Contract is in effect, that. (a) you will not change your name without giving us at least 30 days' prior written notice; (b) each document you sign and deliver to us is duly authorized, executed and delivered by you, and is your valid, legal and binding agreement, enforceable in accordance with its terms; (c) the execution, delivery and performance by you of this Contract does not (and will not) violate any applicable law or breach any order of court or other governmental agency, or of any undertaking you are a party to or by which you or any of your properties are bound, (d) you will comply with all applicable laws, ordinances and regulations; (e) upon execution of this Contract, the Seller shall have good and marketable title to any trade-in equipment free and clear of all liens and encumbrances whatsoever, (f) all information you have given to us is true, accurate and complete, (g) since the date of the most recent financial information given to us, no material adverse change in your business, assets, or prospects has occurred; (h) you will promptly deliver to us such financial statements, reports and other information as we may request; (i) the Equipment was selected by you, (j) the Equipment (including all manufacturer manuals and instructions) has been delivered to, and examined by, you, (k) the safe operation and the proper servicing of the Equipment were explained to you, (l) you received the written warranty applicable to the Equipment and understand that your rights under the written warranty may be limited, (m) the Equipment is unconditionally and irrevocably accepted by you as being suitable for its intended use; (n) the Equipment is in good condition and repair (operating and otherwise), (o) the Equipment shall be used only for the purpose indicated herein, will remain in your possession and will not be sold, rented or leased; and (p) you will pay all taxes assessed on the Equipment

Unless you are an individual, you also represent, warrant and covenant to us that: (a) you are and will remain duly organized, validly existing and in good standing under the laws of your jurisdiction of organization; (b) you are qualified to do business under the laws of all other jurisdictions where qualification is required or advisable, (c) you will not change your jurisdiction of organization or organization type without at least 30 days' prior written notice to us, and (d) the execution, delivery and performance by you of this Contract will not breach any provision of your organizational documents.

If you are an individual, you agree not to move your residence to a different county or state without at least 30 days' prior written notice to us

**13. Governing Law; Jurisdiction; Venue.** THIS CONTRACT WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF IOWA, WHERE THIS CONTRACT IS ACCEPTED AND ENTERED INTO, except for its conflict of laws provisions You irrevocably submit to the non-exclusive jurisdiction and venue of federal and state courts located in Des Moines, Iowa and will not claim it is an inconvenient forum for legal action. YOU AND WE IRREVOCABLY WAIVE ANY RIGHT YOU AND WE

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

| | 5/18/2010 | Settlement Nbr 10926709 | Equipment Type Construction & Forestry Commercial | |
|---|---|---|---|---|
| DOC8015 | | Application ID 10926709 | Version Number 4 | Customer Initials |
| Revision Date. June 2009 | | | | Page 4 of 5 |



MAY HAVE TO A JURY TRIAL. However, you acknowledge that any Iowa state law compulsory mediation requirements will apply to this agreement or the Equipment only if you are a resident of the State of Iowa

**14. Miscellaneous. WE HAVE NOT MADE, AND DO NOT MAKE, ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE EQUIPMENT'S MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY, OR OTHERWISE. WE ARE NOT LIABLE FOR CONSEQUENTIAL OR SPECIAL DAMAGES.** You acknowledge that the Seller of the Equipment is not an agent of ours, or authorized to act for or bind us. You agree not to withhold any amount you owe us if you believe you have a claim against us, the Seller or any manufacturer(s) of the Equipment, but to pursue that claim independently. Any claim you have against us must be made within two years after the event that caused it. All notices must be in writing and will be deemed given 5 days after mailing to the intended recipient at its address indicated above, unless changed by a notice given in accordance with this Section. This Contract supersedes and replaces all prior understandings and communications (oral or written) concerning the subject matter thereof. No part of this Contract can be amended, waived or terminated except by a writing signed by both you and us. This Contract may be signed in separate counterparts that, together, will constitute one document. A paper or facsimile transmission copy of your signature or an electronic signature shall constitute an original signature under applicable law for all purposes. If a court finds any part of this Contract to be invalid or unenforceable, the remainder of this Contract will remain in effect. You permit us to monitor and record telephone conversations between you and us. You agree that by providing us any telephone number, including a mobile phone number, we and any debt collector we retain can contact you using that number, including calls using an automatic dialing and announcing device and prerecorded calls. All of our rights shall remain in effect after the expiration or termination of this Contract

You and we intend to comply with all applicable laws. In no event will we charge or collect any amounts in excess of those allowed by applicable law. In the event any amount in excess of that allowed by law is charged or recovered, any such charge will be deemed limited by the amount legally allowed and any amount received by us in excess of that legally allowed will be applied by us to the payment of amounts legally allowed under this Contract, or refunded to you

**THE TERMS OF THIS CONTRACT SHOULD BE READ CAREFULLY BEFORE SIGNING BECAUSE ONLY THESE WRITTEN TERMS ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES MAY BE LEGALLY ENFORCED. BY SIGNING THIS CONTRACT, YOU AGREE TO THE TERMS ON ALL PAGES. THIS CONTRACT IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN YOU AND US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.**

I agree that I have received a completely filled in copy of this Agreement.

X _JAMES R MCADAMS SR_ (Date Signed)

DATE AGREEMENT SIGNED. 5/18/10

Accepted By. **John Deere Construction & Forestry Company (Lender)**
6400 NW 86th Street, Johnston, IA 50131-6600

By _John A N_ (AUTHORIZED SIGNATURE)

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

| 5/18/2010 | Settlement Nbr 10926709 | Equipment Type Construction & Forestry Commercial | |
|---|---|---|---|
| DOC8015 | Application ID 10926709 | Version Number 4 | Customer Initials | Page 5 of 5 |

Revision Date. June 2009

McAdams proposal

Compound Period ......... :  Monthly

Nominal Annual Rate .... :  6.000 %

CASH FLOW DATA

| | Event | Date | Amount | Number | Period | End Date |
|---|---|---|---|---|---|---|
| 1 | Loan | 09/20/2012 | 864,902.60 | 1 | | |
| 2 | Payment | 10/12/2012 | 150,000.00 | 1 | | |
| 3 | Payment | 11/12/2012 | 21,843.88 | 36 | Monthly | 10/12/2015 |

AMORTIZATION SCHEDULE - Normal Amortization

| | Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| Loan | 09/20/2012 | | | | 864,902.60 |
| 1 | 10/12/2012 | 150,000.00 | 3,127.87 | 146,872.13 | 718,030.47 |
| 2 | 11/12/2012 | 21,843.88 | 3,590.15 | 18,253.73 | 699,776.74 |
| 3 | 12/12/2012 | 21,843.88 | 3,498.88 | 18,345.00 | 681,431.74 |
| 2012 Totals | | 193,687.76 | 10,216.90 | 183,470.86 | |
| 4 | 01/12/2013 | 21,843.88 | 3,407.16 | 18,436.72 | 662,995.02 |
| 5 | 02/12/2013 | 21,843.88 | 3,314.98 | 18,528.90 | 644,466.12 |
| 6 | 03/12/2013 | 21,843.88 | 3,222.33 | 18,621.55 | 625,844.57 |
| 7 | 04/12/2013 | 21,843.88 | 3,129.22 | 18,714.66 | 607,129.91 |
| 8 | 05/12/2013 | 21,843.88 | 3,035.65 | 18,808.23 | 588,321.68 |
| 9 | 06/12/2013 | 21,843.88 | 2,941.61 | 18,902.27 | 569,419.41 |
| 10 | 07/12/2013 | 21,843.88 | 2,847.10 | 18,996.78 | 550,422.63 |
| 11 | 08/12/2013 | 21,843.88 | 2,752.11 | 19,091.77 | 531,330.86 |
| 12 | 09/12/2013 | 21,843.88 | 2,656.65 | 19,187.23 | 512,143.63 |
| 13 | 10/12/2013 | 21,843.88 | 2,560.72 | 19,283.16 | 492,860.47 |
| 14 | 11/12/2013 | 21,843.88 | 2,464.30 | 19,379.58 | 473,480.89 |
| 15 | 12/12/2013 | 21,843.88 | 2,367.40 | 19,476.48 | 454,004.41 |
| 2013 Totals | | 262,126.56 | 34,699.23 | 227,427.33 | |
| 16 | 01/12/2014 | 21,843.88 | 2,270.02 | 19,573.86 | 434,430.55 |
| 17 | 02/12/2014 | 21,843.88 | 2,172.15 | 19,671.73 | 414,758.82 |
| 18 | 03/12/2014 | 21,843.88 | 2,073.79 | 19,770.09 | 394,988.73 |
| 19 | 04/12/2014 | 21,843.88 | 1,974.94 | 19,868.94 | 375,119.79 |
| 20 | 05/12/2014 | 21,843.88 | 1,875.60 | 19,968.28 | 355,151.51 |
| 21 | 06/12/2014 | 21,843.88 | 1,775.76 | 20,068.12 | 335,083.39 |
| 22 | 07/12/2014 | 21,843.88 | 1,675.42 | 20,168.46 | 314,914.93 |
| 23 | 08/12/2014 | 21,843.88 | 1,574.57 | 20,269.31 | 294,645.62 |
| 24 | 09/12/2014 | 21,843.88 | 1,473.23 | 20,370.65 | 274,274.97 |
| 25 | 10/12/2014 | 21,843.88 | 1,371.37 | 20,472.51 | 253,802.46 |
| 26 | 11/12/2014 | 21,843.88 | 1,269.01 | 20,574.87 | 233,227.59 |
| 27 | 12/12/2014 | 21,843.88 | 1,166.14 | 20,677.74 | 212,549.85 |
| 2014 Totals | | 262,126.56 | 20,672.00 | 241,454.56 | |



*EXHIBIT B*

McAdams proposal

|  | Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| 28 | 01/12/2015 | 21,843.88 | 1,062.75 | 20,781.13 | 191,768.72 |
| 29 | 02/12/2015 | 21,843.88 | 958.84 | 20,885.04 | 170,883.68 |
| 30 | 03/12/2015 | 21,843.88 | 854.42 | 20,989.46 | 149,894.22 |
| 31 | 04/12/2015 | 21,843.88 | 749.47 | 21,094.41 | 128,799.81 |
| 32 | 05/12/2015 | 21,843.88 | 644.00 | 21,199.88 | 107,599.93 |
| 33 | 06/12/2015 | 21,843.88 | 538.00 | 21,305.88 | 86,294.05 |
| 34 | 07/12/2015 | 21,843.88 | 431.47 | 21,412.41 | 64,881.64 |
| 35 | 08/12/2015 | 21,843.88 | 324.41 | 21,519.47 | 43,362.17 |
| 36 | 09/12/2015 | 21,843.88 | 216.81 | 21,627.07 | 21,735.10 |
| 37 | 10/12/2015 | 21,843.88 | 108.78 | 21,735.10 | 0.00 |
| 2015 Totals | | 218,438.80 | 5,888.95 | 212,549.85 | |
| Grand Totals | | 936,379.68 | 71,477.08 | 864,902.60 | |

McAdams proposal

Last interest amount increased by 0.10 due to rounding.